## The Boston Herald, Inc. *vs.* Richard J. Sharpe
(and two consolidated cases[1]).

Suffolk. October 6, 2000. - November 8, 2000.

Present: Marshall, C.J., Greaney, Ireland, Spina, & Sosman, JJ.

*Constitutional Law,* Impoundment order, Fair trial. *Uniform Rules on Impound-ment Procedure. Supreme Judicial Court,* Superintendence of inferior courts, Appeal from order of single justice. *Public Records. Privacy.*

Discussion of procedure under the Uniform Rules on Impoundment Procedure and of the standards of review by the single justice of an order granting or denying impoundment. [600-601]

This court stated that the appropriate course for a party aggrieved by an order of a single justice in an impoundment proceeding is to seek review under the provisions of G. L. c. 211, § 3. [601-603]

Discussion of cases considering the impoundment of records in civil proceed-ings and statement of the factors that a judge must consider in exercising discretion to impound documents. [603-605]

This court concluded that the records of proceedings under G. L. c. 209A, including affidavits, are presumptively open to public inspection. [605-608]

A criminal defendant, charged with the violation of an order under G. L. c. 209A to stay away from his wife and with the murder of his wife, did not demonstrate that his right to a fair trial or any privacy concerns required the impoundment of the affidavits in the c. 209A proceeding. [608-612]

Petitions filed in the Supreme Judicial Court for the county of Suffolk, two on July 31, 2000, and one on August 1, 2000, respectively.

The cases were heard by *Cowin,* J.

*Paul G. Lannon, Jr., & Joseph J. Balliro (Karen R. Sweeney Shea* with them) for Richard J. Sharpe.

*Elizabeth A. Ritvo* for The Boston Herald, Inc., intervener.

*Michael T. Gass (Marc J. Goldstein* with him) for WHDH-TV, Inc., intervener.

---

[1]The Essex County Newspapers, Inc. vs. Richard J. Sharpe. WHDH-TV, Inc. vs. Richard J. Sharpe. The estate of Karen H. Sharpe has also intervened. The Attorney General entered an appearance for the Appeals Court solely before the single justice of this court.

*Roger D. Matthews* for The Essex County Newspapers, Inc., intervener.

*Jacob M. Atwood* (*Mark T. Smith & Erin Moran Shapiro* with him) for Karen H. Sharpe, intervener.

MARSHALL, C.J. On July 14, 2000, Karen H. Sharpe was shot to death in her home in Wenham. Two days later her husband, Richard J. Sharpe (Sharpe), was arrested in New Hampshire in connection with her death and was returned to the Commonwealth. He has now been indicted for murder in the first degree, and violation of a protective order, G. L. c. 209A. The death of Karen Sharpe, the police manhunt for, and the arrest of Sharpe were widely reported. In the wake of these events, The Boston Herald, Inc. (Boston Herald); The Essex County Newspapers, Inc. (Essex County Newspapers); and WHDH-TV, Inc. (WHDH-TV) (collectively, the media interveners) sought access to impounded documents in the Sharpes' divorce action and a related abuse prevention injunctive action. A judge in the Probate and Family Court allowed their motions and unsealed all of the impounded records.

On July 31, 2000, and August 1, 2000, the media interveners filed in the Supreme Judicial Court for Suffolk County petitions pursuant to G. L. c. 211, § 3, seeking review of an order of a single justice of the Appeals Court impounding some but not all of the disputed documents. A single justice of this court vacated the order and effectively unsealed the court records.[2] Sharpe takes the present appeal to the full court from her order.[3]

We hold that in the specific circumstances of this case the public has a right of access to all of the judicial records of the relevant court proceedings in the Probate and Family Court; the continued impoundment of the documents is not necessary to protect Sharpe's constitutional or other rights to a fair trial or to protect any privacy rights he may have.

I

To elucidate his claims, and those of the media interveners, we describe summarily the actions in the Probate and Family

---

[2]We discuss in Part II, *infra*, which documents are at issue in this appeal.

[3]Both the single justice of the Appeals Court and the single justice of this court entered a stay of their respective orders; all of the documents remain impounded pending this appeal.

Court that underlie this appeal, and the efforts of the media interveners to inspect the records of those proceedings. Richard and Karen Sharpe were married in 1973. In February, 2000, Karen Sharpe moved out of the marital home in Gloucester and, after some weeks, moved with their two minor children to a new home in Wenham. On March 9, 2000, Sharpe filed for divorce in the Probate and Family Court (divorce action). In May, 2000, at the request of Karen Sharpe, supported by her affidavit dated May 17, 2000, and after an ex parte hearing, a judge in the Probate and Family Court issued, in a separate action, an abuse prevention order against Sharpe under G. L. c. 209A (abuse prevention action). The record does not reflect whether the judge received any other evidence at that time.

On May 30, 2000, the judge extended the abuse prevention order, by agreement. On June 12, 2000, the judge again ordered that the protective order be continued. Two additional affidavits of Karen Sharpe, dated June 9 and June 12, 2000, respectively, were filed in support of the continued protective order. We need not describe here the contents of those affidavits, except to note that they contain, generally, allegations of Karen Sharpe that her husband had verbally and physically abused her on a number of occasions.

By June, 2000, there were multiple outstanding disputes between the Sharpes in their divorce action concerning discovery, temporary visitation agreements, financial disclosures, and related matters. On June 12, 2000, they filed in both the divorce action and in the abuse prevention action a stipulation that resolved those disputes. The judge thereupon entered several orders. First, as noted above, he extended indefinitely the abuse prevention order against Sharpe. Second, he appointed a guardian ad litem for the minor children. Third, with the agreement of Sharpe, he allowed a motion of Karen Sharpe filed in the divorce action to impound that case file.[4] The judge indorsed the motion as follows: "Motion allowed, so as to

[4]Rule 1 of the Uniform Rules on Impoundment Procedure (West 2000) provides that " 'impoundment' shall mean the act of keeping some or all of the papers, documents, or exhibits, or portions thereof in a case separate and unavailable for public inspection." Contrary to the requirements of Rule 2 of the Uniform Rules on Impoundment Procedure, Karen Sharpe's motion for impoundment was not "accompanied by affidavit in support thereof." See note 5, *infra.*

impound case file only (not docket entries) — for 1 year." The judge did not make any written findings.[5] Although the order makes no reference to the abuse prevention action, Karen Sharpe's motion to impound refers to her affidavits filed therein, noting that the consequences of their public disclosure "may be extremely detrimental to the parties and their minor children."[6]

In July, 2000, following the death of Karen Sharpe, the media interveners filed in the Probate and Family Court separate motions to vacate the blanket impoundment order entered on June 12, 2000.[7] Sharpe opposed the motions, and filed an "emergency" motion to appoint a guardian ad litem for the minor children on the issue of unsealing the records. Following a closed hearing,[8] the judge in the Probate and Family Court

[5]Rule 8 of the Uniform Rules on Impoundment Procedure provides in part: "An order of impoundment, whether ex parte or after notice, may be made *only* upon written findings" (emphasis added). The Uniform Rules on Impoundment Procedure contain procedures and requirements that must be followed if an order of impoundment is to issue. See *H.S. Gere & Sons* v. *Frey*, 400 Mass. 326, 332 (1987). We need not decide whether the failure to do so makes an impoundment order invalid, as the media interveners suggest, because the order underlying this appeal is the probate judge's later order vacating impoundment.

[6]It appears that the judge in the Probate and Family Court treated the two actions as one, at least for purposes of impoundment. Rule 9 of the Uniform Rules on Impoundment Procedure provides that "[u]pon entry of an order of impoundment, the clerk shall make a notation in the civil docket indicating what material has been impounded." There is no impoundment order noted on the docket of the abuse prevention action, although the front of the docket is clearly marked, "Impounded." See note 5, *supra.* In her order, the single justice of this court said that the Probate Court judge "ordered that the entire case file for both the divorce action and the abuse prevention action (except the docket entries) be impounded for one year." We conclude, as did the single justice, that the entire case files of both actions were impounded on June 12, 2000.

[7]Rule 10 of the Uniform Rules on Impoundment Procedure provides, in part, that "any interested third person . . . may, by motion *supported by affidavit*, seek to modify or terminate an order of impoundment" (emphasis added). Two of the media interveners, Essex County Newspapers and WHDH-TV filed motions to vacate the impoundment order. The Boston Herald filed a motion to intervene and to vacate the order of impoundment, accompanied by an affidavit of its deputy managing editor, news. Rule 10 would seem to require the filing of a motion to intervene where, as here, someone not previously determined to be an interested person appears and seeks to modify or terminate the impoundment order.

[8]No party has challenged the decision of the judge in the Probate and Family Court to close the hearing.

vacated his impoundment order of June 12, 2000, adding that "[t]o the extent" the impoundment order was entered in the abuse prevention action, that order was also vacated. He ordered that the files in both actions be made available to the public.[9] He also denied Sharpe's motion to appoint a guardian ad litem for the minor children.[10]

On July 26, 2000, Sharpe sought review of that order pursuant to Rule 12 of the Uniform Rules on Impoundment Procedure[11] and G. L. c. 231, § 118, first par.,[12] before a single justice of the Appeals Court. He claimed that his right to a fair trial outweighed the public's interest in access "to pretrial documentation filed in a divorce action." He also asserted that the judge in the Probate and Family Court had failed to accord the ap-

---

[9]In the memorandum of decision accompanying his order the judge noted that, based on the stipulation presented to him on June 12, he had determined that good cause for impoundment had been shown at that time, and that it was in the best interest of the minor children (ages four and seven years) that the file be impounded for a period of one year. He further noted that, by July 25, 2000, much of the information that the parties sought to protect from public disclosure and from disclosure to their children had now been widely disclosed in the media, and that any "reasonable expectations of privacy possessed by most litigants in ordinary divorce proceedings" was surrendered once "their situation" became a matter of "legitimate public concern." The judge found that "the public's right to know, and the public's right of access to this information clearly outweigh any reasonable expectation of privacy," and that those public rights "clearly outweigh the interest which any party to this case or any other individual might have in protecting the impounded materials."

[10]Divorce counsel for Karen Sharpe was served and appeared, without objection, at the Probate and Family Court hearing and at the hearing before the single justice of the Appeals Court. See note 18, *infra*. Counsel apparently informed the single justice that the Sharpes' minor children do not support continued impoundment of the documents. The estate of Karen Sharpe was permitted to intervene in the proceeding before the single justice of this court. See note 1, *supra*.

[11]Rule 12 of the Uniform Rules on Impoundment Procedure provides: "An order impounding or refusing to impound material shall be subject to review by a single justice of an appellate court in accordance with provisions of law and consistent with the procedures established in rule 1:15 of the Rules of the Supreme Judicial Court."

[12]General Laws c. 231, § 118, first par., provides that "[a] party aggrieved by an interlocutory order of a trial court justice in the . . . probate and family court department may file, within thirty days of the entry of such order, a petition in the appropriate appellate court seeking relief from such order. A single justice of the appellate court may, in his discretion, grant the same relief as an appellate court is authorized to grant pending an appeal under [§ 117]. . . ." See note 18, *infra*.

propriate weight to his rights under the Sixth Amendment to the United States Constitution to a fair trial, and to his privacy rights. A single justice of the Appeals Court allowed his motion in part: she ordered that Karen Sharpe's affidavits of June 9 and June 12, 2000, remain subject to the initial order of impoundment "pending the conclusion of the criminal proceedings against Sharpe, or further order of court." She ordered that all other documents "shall not be impounded." Sharpe filed an emergency motion for reconsideration and for leave to appeal to the full Appeals Court. On reconsideration, the single justice ordered the impoundment of a third affidavit (dated May 17, 2000). She denied his motion in all other respects.

The three media interveners then filed in the county court the petitions described above.[13] A single justice of this court vacated the order of the single justice of the Appeals Court and reinstated the order of the Probate and Family Court, thereby unsealing all of the judicial records. This appeal by Sharpe from her order followed.

II

We clarify first the status in this appeal of the various documents subject to the initial blanket impoundment order entered on June 12, 2000.

As noted above, on July 25, 2000, the Probate Court judge vacated the entire impoundment order. On Sharpe's petition to the Appeals Court, the single justice again impounded three affidavits of Karen Sharpe; she affirmed the Probate Court judge in all other respects. Only the media interveners sought review of her order pursuant to G. L. c. 211, § 3, each specifying that

---

[13]Two of the media interveners, the Boston Herald and Essex County Newspapers, named the Appeals Court as the defendant, presumably because the case was then in that court. See *Ottaway Newspapers, Inc.* v. *Appeals Court*, 372 Mass. 539, 540 n.3 (1977). WHDH-TV named Sharpe as the petitioner and Karen Sharpe as the respondent. Rule 10 of the Uniform Rules on Impoundment Procedure provides that a motion to terminate an impoundment order "shall be served . . . upon all parties, all interested third persons who were notified pursuant to Rule 4 of these rules, and any other persons as ordered by the court." The same persons should be named in any review of an impoundment order sought before a single justice of an appellate court, with the aggrieved party who seeks review named as the petitioner. See Rule 12 of the Uniform Rules on Impoundment Procedure.

they sought relief only from the impoundment of the three affidavits.[14] In its petition the Boston Herald added that the "remainder" of the order of the single justice of the Appeals Court effectively released all other documents and "thus that part of the order is not at issue in this petition."

For his part Sharpe took no affirmative steps to seek review of any aspect of the order of the single justice of the Appeals Court; he did not file a petition before the single justice of this court, nor did he file a cross petition. In a memorandum in opposition to the petitions of the media interveners, he did argue that the June 12, 2000, blanket order of impoundment should be "reinstated." But an aggrieved party "may not secure modification of a judgment unless [he] has filed a cross [petition]." *Hartford Ins. Co.* v. *Hertz Corp.*, 410 Mass. 279, 288 (1991), and cases cited. See *Aetna Cas. & Sur. Co.* v. *Continental Cas. Co.*, 413 Mass. 730, 734 (1992); 15 C.A. Wright, A.R. Miller & E.H. Cooper, Federal Practice and Procedure § 3904 (1995).[15] We have stated that generally "failure to take a cross [petition] precludes a party from obtaining a judgment more favorable to it than the judgment entered below." *Hartford Ins. Co.* v. *Hertz Corp.*, *supra*, quoting *Boston Edison Co.* v. *Boston Redevelopment Auth.*, 374 Mass. 37, 43 n.5 (1977), and cases cited. An order of the single justice of this court to impound all of the documents would surely have been a judgment more favorable to Sharpe than the relief ordered by the single justice of the Appeals Court. She implicitly declined to consider Sharpe's request

---

[14]The Boston Herald sought review of so much of the order of the Appeals Court that is "keeping [three] affidavits sealed," and sought release of the "impounded affidavits." Essex County Newspapers sought a ruling "that the subject papers should be available for public access and inspection." WHDH-TV sought relief from the order "continuing the impoundment of three affidavits contained in the [Sharpe] divorce file."

[15]Following a hearing on August 2, 2000, before the single justice of this court, the Boston Herald filed a "statement" identifying "the documents which have been ordered to be sealed or unsealed" by the judge in the Probate and Family Court and the single justice of the Appeals Court, in which it again noted that Sharpe had not filed a petition for review of the order of the single justice of the Appeals Court unsealing the documents, see note 14, *supra*, adding that "no challenge to that portion of the order has been formally raised." Sharpe still took no action seeking review of the order of the single justice of the Appeals Court.

to impound the entire file.[16] She was correct to do so, for "[t]his is not that rare case in which a court should entertain such an argument . . . ." *Aetna Cas. & Sur. Co.* v. *Continental Cas. Co.*, *supra*. The case files of both actions in the Probate and Family Court, other than Karen Sharpe's three affidavits, are thus not subject to any impoundment order; they remain sealed only because of the stay entered by the single justice of this court. We review only her order releasing the three affidavits and do not address Sharpe's broader requests for relief.[17]

### III

Because it is a recurring problem, we next discuss the correct procedure for litigants to follow when seeking appellate review, under the uniform rules on impoundment procedure, of trial court orders concerning impoundment, and we discuss the correct standards of review to be applied by an appellate court and a single justice at each stage of the process.[18]

The uniform rules on impoundment procedure describe a procedure by which a judge in any department of the trial court

---

[16]In a letter to the single justice of this court Sharpe informed her that it would "be well within [her] discretion and authority to reinstate the original June 12 impoundment order." The single justice correctly did not exercise any such discretion.

[17]On appeal to the full court Sharpe asks us to "continue" the June 12 impoundment order "pending further review by the trial court hearing the criminal charges" against him. Alternatively, he asks that we insulate from public inspection any document that we determine there is 'good cause' to impound," including "at least" the three affidavits filed by Karen Sharpe, affidavits of his own, and "any pleadings referencing those affidavits."

[18]As described in Part II of this opinion, Sharpe relied on both the uniform rules and G. L. c. 231, § 118, first par., as bases for proceeding before the single justice of the Appeals Court. The single justice noted in her memorandum and order that the divorce action was abated when Karen Sharpe died, and none of the litigants before us has disputed that conclusion. See *Ross* v. *Ross*, 385 Mass. 30, 35 (1982); C.P. Kindregan & M.L. Inker, Family Law and Practice § 29.2, at 112 (2d ed. 1996). It is debatable, therefore, whether the probate judge's order terminating impoundment was an interlocutory order that would be subject to review pursuant to G. L. c. 231, § 118, first par.

The single justice of the Appeals Court made no mention of G. L. c. 231, § 118, first par., in her memorandum and order. She treated the matter before her strictly as a proceeding pursuant to rule 12. We, too, shall focus on rule 12. As will be seen from our analysis, *infra*, the applicable procedure and the standards of review are substantially the same regardless whether the matter proceeds pursuant to G. L. c. 231, § 118, first par., or rule 12.

may impound or refuse to impound material or may modify or terminate an existing impoundment order. Rule 12 provides that an order "impounding or refusing to impound material" shall be subject to review by a single justice of an appellate court. Rule 12 must logically be read to allow review not only of orders of impoundment or refusal to impound under the rules, but also of orders obtained under rule 10 that modify or terminate previously issued impoundment orders. Sharpe, therefore, properly sought review by the single justice of the Appeals Court from the July 25, 2000, order of the Probate Court vacating the initial order of impoundment. See G. L. c. 211A, § 10.

The uniform rules do not specify the standard of review that a single justice of either appellate court is to apply when considering a matter under rule 12. We think it fairly clear, however, that a single justice must determine whether the lower court judge abused his or her discretion or committed an error of law in issuing the order concerning impoundment. Both before and after the promulgation of the uniform rules, this court has recognized that judges have discretion to impound court files in appropriate circumstances, and the court has reviewed impoundment orders to determine whether they constitute an abuse of discretion or are legally erroneous. See, e.g., *Newspapers of New England, Inc.* v. *Clerk-Magistrate of the Ware Div. of the Dist. Court Dep't*, 403 Mass. 628, 629, 637-638 (1988), cert. denied, 490 U.S. 1066 (1989); *H.S. Gere & Sons* v. *Frey*, 400 Mass. 326, 329 (1987); *George W. Prescott Publ. Co.* v. *Register of Probate for Norfolk County*, 395 Mass. 274, 277-282 (1985). See also *Sanford* v. *Boston Herald-Traveler Corp.*, 318 Mass. 156, 158 (1945). Cf. *Globe Newspaper Co.* v. *Commonwealth*, 407 Mass. 879, 885-886 (1990). The single justice of the Appeals Court stated that the applicable standard of review was the abuse of discretion or error of law standard. None of the parties requested that she apply any other standard.

Once a single justice of an appellate court decides a matter pursuant to rule 12, the uniform rules make no provision for any further review. The rules thus do not authorize a party aggrieved by the single justice's decision to appeal as a matter of right to the full appellate court. Because no other remedy is expressly provided, an appropriate course for an aggrieved party to pursue in a case such as this, where a single justice of

the Appeals Court has decided the rule 12 matter, would be to file a petition in the Supreme Judicial Court for Suffolk County, as the media interveners have done here, seeking to invoke the court's general superintendence power under G. L. c. 211, § 3. Under that statute, a single justice of this court could grant relief from the decision of the single justice of the Appeals Court if the petitioner demonstrated an otherwise irremediable and substantial violation of its substantive rights. *Planned Parenthood League of Mass., Inc.* v. *Operation Rescue*, 406 Mass. 701, 706 (1990), and cases cited. While the focus of the petition should be on whether the single justice of the Appeals Court erred, the resolution of that inquiry might require the single justice of this court to look indirectly at the underlying order of the judge in the trial court, to see whether there was an abuse of discretion or error of law when evaluating the competing interests and issuing the order concerning impoundment that is in dispute.

An aggrieved party to a G. L. c. 211, § 3, proceeding may then, of course, appeal to the full court, as Sharpe has done in this case.[19] The full court will reverse a single justice's judgment, however, only if he or she has made a clear error of law or has abused his or her discretion. *Department of Mental Retardation* v. *Kendrew*, 418 Mass. 50, 53 (1994), and cases cited. *Fogarty* v. *Commonwealth*, 406 Mass. 103, 106 (1989). That is the traditional standard governing our review of judgments pursuant to G. L. c. 211, § 3. We have applied that standard even where constitutionally based claims are at stake. See, e.g., *Burton* v. *Commonwealth*, *post* 1008 (2000) (due process); *Cepulonis* v. *Commonwealth*, 426 Mass. 1010 (1998) (double jeopardy); *Spero* v. *Commonwealth*, 424 Mass. 1017 (1997) (equal protection). See also *Commonwealth* v. *Clark*, *ante* 1, 7-10 (2000) (applying abuse of discretion or clear error of law standard to review single justice's order concerning media presence in court room in criminal case); *WBZ-TV4* v. *District Attorney for the Suffolk Dist.*, 408 Mass. 595, 602-604 (1990) (applying traditional standard to review single justice's order concerning media access to tape-recorded witness statement).

Citing *Commonwealth* v. *Ramos*, 430 Mass. 545, 546 (2000),

---

[19]In cases where the single justice has denied relief from an interlocutory order concerning impoundment in the trial court, see the requirements of S.J.C. Rule 2:21, 421 Mass. 1303 (1995).

and *Commonwealth* v. *Cruz*, 373 Mass. 676, 682 n.2 (1977), Sharpe contends that, because he raises issues of constitutional dimension, the single justice's granting of relief under G. L. c. 211, § 3, should be "open for independent review [by the full court] on appeal." Those cases were appeals involving challenges to orders suppressing evidence in criminal cases. In those cases we stated and applied the traditional standard of review for suppression rulings: an appellate court does not disturb a motion judge's subsidiary findings of fact that are warranted by the evidence, but conducts an independent review of the judge's ultimate findings and rulings of law, particularly those of constitutional dimension.

In cases such as this — appeals from judgments entered pursuant to G. L. c. 211, § 3 — we have not applied the standard of review suggested by Sharpe. Indeed, the phraseology of that standard plainly indicates that it is suited to appellate court review of findings of fact and rulings of law made by judges in the trial court following evidentiary hearings. We decline to intermix that standard with the standard traditionally applied when we review judgments entered under G. L. c. 211, § 3: the abuse of discretion or clear error of law standard.

As our analysis below indicates, however, even under the traditional G. L. c. 211, § 3, standard the full court must independently review a single justice's legal rulings to determine whether they are erroneous.[20] In conducting that type of review and making that type of determination, we, like the single justice, examine the competing legal rights (constitutional and otherwise) of the parties. No deference is given to the single justice's legal rulings or to the legal rulings of the probate judge. Thus it is inherent in the standard of review we apply, the abuse of discretion or clear error of law standard, that we independently determine and apply the law.

## IV

We turn now to the substance of Sharpe's claims. The uniform rules that now govern the impoundment of records in civil proceedings "incorporate many of the principles of our prior

---

[20]The single justice of this court, whose decision we review, did not find any facts in the traditional sense, and the matter before her required no independent exercise of discretion. Cf. *Commonwealth* v. *Hodge (No. 1)*, 380 Mass. 851, 853-857 (1980) (discussing single justice's role in reviewing trial court order staying execution of sentence pending appeal in criminal case).

cases." *H.S. Gere & Sons* v. *Frey*, 400 Mass. 326, 332 (1987). We interpret those rules in light of our long-standing recognition that "only in the most extreme situations, if at all, may a State court constitutionally forbid.a newspaper (or anyone else) to report or comment on happenings . . . which have been held in open court; and a similar rule would apply to court files otherwise unrestricted." *Ottaway Newspapers, Inc.* v. *Appeals Court*, 372 Mass. 539, 547-548 (1977).

The principle of publicity of judicial records is not, however, absolute. See *Ottaway Newspapers, Inc.* v. *Appeals Court, supra* at 548 ("how far a State is required to go in assisting the press [or others] to gather information [and] keep . . . files open" is unclear). See also *Nixon* v. *Warner Communications, Inc.*, 435 U.S. 589, 598-599 (1978). Courts possess supervisory power over their records and files, and have properly denied public access where those records and files "might have become a vehicle for improper purposes." *Id.* at 598.[21] We have explained that a court possesses "inherent equitable power to impound its files in a case and to deny public inspection of them . . . when justice so requires." *George W. Prescott Publ. Co.* v. *Register of Probate for Norfolk County*, 395 Mass. 274, 277 (1985), quoting *Sanford* v. *Boston Herald-Traveler Corp.*, 318 Mass. 156, 158 (1945).

Consistent with these principles, rule 7 of the uniform rules provides that a judge evaluating a motion to impound documents may enter an order of impoundment only if "good cause" to withhold documents from the public is shown. To determine whether good cause is shown, a judge must balance the rights of the parties based on the particular facts of each case.[22] See *Nixon* v. *Warner Communications, Inc., supra* at 599 (decision to grant access to court documents is "best left to the sound

---

[21]Such purposes include the use of court files as "reservoirs of libelous statements for press consumption," as vehicles to "gratify private spite or promote public scandal [by publicizing] . . . the painful and sometimes disgusting details of a divorce case," or as "sources of business information that might harm a litigant's competitive standing" (citations omitted). *Nixon* v. *Warner Communications, Inc.*, 435 U.S. 589, 598 (1978), quoting *In re Caswell*, 18 R.I. 835, 836 (1893).

[22]The judge must take into account all relevant factors, "including, but not limited to, the nature of the parties and the controversy, the type of information and the privacy interests involved, the extent of community interest, and the reason for the request." Rule 7 of the Uniform Rules on Impoundment Procedure.

discretion of the trial court" to be exercised in light of the relevant facts and circumstances of the particular case); *Newspapers of New England, Inc.* v. *Clerk-Magistrate of the Ware Div. of the Dist. Court Dep't,* 403 Mass. 628, 638 (1988) (Wilkins, J., concurring), citing Uniform Rules on Impoundment Procedure (1988). See also *id.* (judge must balance interests of publicity and defendant's right to fair trial); *H.S. Gere & Sons* v. *Frey, supra* at 329 (judge must balance parties' privacy concerns against general principle of publicity).[23] If there is good cause to impound documents, a judge is required to tailor the scope of the impoundment order so that it does not exceed the need for impoundment. *Newspapers of New England, Inc.* v. *Clerk-Magistrate of the Ware Div. of the Dist. Court Dep't, supra.*[24]

We consider first the public right of access to judicial records of G. L. c. 209A proceedings.[25] There is a well-established common-law right of access to the judicial records of civil proceedings. See *Nixon* v. *Warner Communications, Inc., supra* at 597 ("the courts of this country recognize a general right to inspect and copy public records and documents" [footnotes

---

[23]Sharpe mischaracterizes the relationship of "good cause" to the balancing test by asserting that a judge must first determine whether there is good cause to impound the documents, and only then balance impoundment with any countervailing interests. It is "[t]hrough the balancing process" that a judge makes the determination of "good cause." *H.S. Gere & Sons* v. *Frey, supra* at 329.

[24]The Supreme Court of the United States has established a three-pronged test to determine whether an order of closure comports with the constitutional presumption of access to criminal proceedings and records. The burden falls on the party seeking closure to demonstrate that (1) there exists a substantial probability that permitting access to court records will prejudice his fair trial rights; (2) closure will be effective in protecting those rights, and that that the order of closure is narrowly tailored to prevent potential prejudice; and (3) there are no reasonable alternatives to closure. See *Press-Enterprise Co.* v. *Superior Court,* 478 U.S. 1, 14-15 (1986). The uniform rules require a judge to take into account essentially the same factors in the "good cause" analysis: the competing rights of the parties and alternatives to impoundment.

[25]Sharpe suggests that rights of access to "pretrial documents in a divorce proceeding," are limited because divorce proceedings are not "traditionally" open. See, e.g., *George W. Prescott Publ. Co.* v. *Register of Probate for Norfolk County,* 395 Mass. 274, 278 (1985). Accordingly, he asserts that Karen Sharpe's affidavits, copies of which were filed in the divorce action, should not be open to public inspection. But the affidavits were filed by Karen Sharpe in support of her efforts to obtain relief under G. L. c. 209A, and the proper focus of our inquiry is the right of access to those proceedings.

omitted]); *Ottaway Newspapers, Inc.* v. *Appeals Court, supra* at 546 (affirming "with emphasis" general principle of publicity in the absence of statutory limitation on access to judicial records). The presumption of access facilitates "the citizen's desire to keep a watchful eye on the workings of public agencies," permits the media to "publish information concerning the operation of government," *Nixon* v. *Warner Communications, Inc., supra* at 598, and supports the public's right to know "whether public servants are carrying out their duties in an efficient and law-abiding manner." *George W. Prescott Publ. Co.* v. *Register of Probate for Norfolk County, supra* at 179, quoting *Attorney Gen.* v. *Collector of Lynn,* 377 Mass. 151, 158 (1977). Access to otherwise unrestricted records of judicial proceedings may therefore be viewed as an essential component of the general principle of publicity: "the public often would not have a 'full understanding' of the proceeding and therefore would not always be in a position to serve as an effective check on the system" if it were denied access to judicial records. *Globe Newspaper Co.* v. *Pokaski,* 868 F.2d 497, 502 (1st Cir. 1989). See *New Bedford Standard-Times Publ. Co.* v. *Clerk of the Third Dist. Court of Bristol,* 377 Mass. 404, 417 (1979) (Abrams, J., concurring) ("greater access to information about the actions of public officers and institutions is increasingly recognized as an essential ingredient of public confidence in government").

In criminal cases we have used a two-part test to determine whether there is a constitutional right of access to judicial records: the proceedings must have "an historic tradition of openness," and the public's access must play "a significant positive role in the functioning of the particular process in question." *Newspapers of New England, Inc.* v. *Clerk-Magistrate of the Ware Div. of the Dist. Court Dep't, supra* at 635, quoting *Press-Enterprise Co.* v. *Superior Court,* 478 U.S. 1, 8 (1986). The public interest in access to judicial records concerning domestic violence is at least as strong.[26] The "tradition" of public access to G. L. c. 209A would plainly satisfy the first part of that test.

---

[26]The Supreme Court has explained that "in some civil cases the public interest in access, and the salutary effect of publicity, may be as strong as, or stronger than, in most criminal cases." *Gannett Co.* v. *DePasquale,* 443 U.S. 368, 386-387 n.15 (1979). In light of this suggestion, a number of Federal courts have determined that the First Amendment to the United States Constitution affords the public the right to inspect documents in civil cases. See, e.g., *Rushford* v. *New Yorker Magazine, Inc.,* 846 F.2d 249 (4th Cir. 1988); *Westmoreland* v. *Columbia Broadcasting Sys., Inc.,* 752 F.2d 16 (2d

See *Globe Newspaper Co.* v. *Commonwealth*, 407 Mass. 879, 884 (1990). ("In the absence of a statute, a rule of court, or a principle expressed in an appellate opinion authorizing or directing a courtroom to be closed, the expectation is that courtrooms will be open"). And the affidavits submitted by an applicant for a protective order that essentially serve as a substitute for, or supplement to, the applicant's testimony in open court, have an "integral relationship" with those proceedings. *Newspapers of New England, Inc.* v. *Clerk-Magistrate of the Ware Div. of the Dist. Court Dep't, supra* at 635.

Affidavits filed in support of a domestic abuse protective order would also satisfy the second part of the test, for access to those records permits the public to assume a significant, positive role in the functioning of the judicial system. The media interveners properly note that it is of considerable importance for the public to be in a position to evaluate why an order may or may not have been successful in protecting a victim of domestic violence. Conversely, protective orders may impose significant restraints on defendants, and it is equally important that the public's understanding of and confidence in the judiciary be facilitated by knowing the basis on which a judge acted in a particular case.

The presumption of public access to these affidavits also finds support in the statute itself. As the single justice noted, G. L. c. 209A contains two express provisions limiting public disclosure of identified portions of court documents: the impoundment of the address of the person seeking a protective order, on request, and the impoundment of the records of cases in which either the plaintiff or the defendant is a minor. See G. L. c. 209A, § 8. In 1999, the Legislature amended the existing law to add new provisions to protect applicants from disclosing to their abusers and the public their addresses and telephone numbers.[27] The Legislature did not include affidavits (or any other portion of the file) in the category of information that may

Cir. 1984), cert. denied sub nom. *Cable News Network, Inc.* v. *United States Dist. Court*, 472 U.S. 1017 (1985).

[27]Statute 1999, c. 127, § 156, approved November 16, 1999, and by § 390 made effective July 1, 1999, added third paragraph to G. L. c. 209A, § 8. That paragraph provides: "The portions of records of cases arising out of an action brought by a plaintiff under the provisions of this chapter, which consist of such plaintiff's current residential address, former residential address, residential telephone number and workplace name, address and telephone number, shall be kept confidential from the defendant and defendant's at-

be impounded. We glean from this the Legislature's determination that, except as expressly provided, judicial records of G. L. c. 209A proceedings are presumptively open. Sharpe's reliance on *Ottaway Newspapers, Inc.* v. *Appeals Court*, 372 Mass. 539 (1977), is therefore misplaced. We concluded in that case that impoundment of confidential bank records was not an unconstitutional infringement of the media's right of access to records in a civil case, in light of the "clear legislative design" of G. L. c. 167, §§ 2-7, that a financial institution should not be required to reveal certain confidential financial information. *Id.* at 549. There is no such legislative determination of confidentiality for G. L. c. 209A matters.

Against this "rigorous presumption of openness," as she correctly termed it, the single justice first balanced Sharpe's competing constitutional guarantee to a fair trial before an impartial jury. We see no error in her conclusion that his rights under the Sixth Amendment to the United States Constitution did not require impoundment of the affidavits.

In balancing the public's right to inspect documents against a defendant's rights guaranteed by the Sixth Amendment to a fair trial, a court may consider a variety of factors. These may include whether the information has already been disclosed, the nature of the documents under impoundment, or whether there are alternatives to withholding public access, such as a change of venue. See *Commonwealth* v. *Colon-Cruz*, 408 Mass. 533, 551 (1990); *H.S. Gere & Sons* v. *Frey*, supra at 330; *George W. Prescott Publ. Co.* v. *Register of Probate for Norfolk County*, supra at 278-279.

The public's right of access is strong in this case. We have already explained that the public has a powerful interest in monitoring G. L. c. 209A proceedings and judicial resolution of claims of domestic abuse. Moreover, even a brief delay of disclosure of judicial records in those proceedings may infringe on those rights. "As a practical matter . . . the element of time is not unimportant if press coverage is to fulfill its traditional function of bringing news to the public promptly." *Nebraska Press Ass'n* v. *Stuart*, 427 U.S. 539, 561 (1976).

Sharpe's right to a fair trial, on the other hand, is "undeni-

---

torney and shall be withheld from public inspection except by order of the court . . . . Upon request of the plaintiff, the court shall impound the plaintiff's current and former residential address, telephone number and workplace name, address and telephone number consistent with this section."

ably a substantial government interest," and judges are charged with "an affirmative constitutional duty to minimize the effects of prejudicial pretrial publicity." *Newspapers of New England, Inc.* v. *Clerk-Magistrate of the Ware Div. of the Dist. Court Dep't, supra* at 632-633, quoting *Gannett Co.* v. *DePasquale,* 443 U.S. 368, 378 (1979). Relying on a statement in *In re Globe Newspaper Co.,* 729 F.2d 47, 53 (1st Cir. 1984),[28] Sharpe contends that his Sixth Amendment rights are presumptively preeminent. Pretrial publicity that may be occasioned by the release of the affidavits does not, however, necessarily trump the principle of publicity: "[P]retrial publicity — even pervasive, adverse publicity — does not inevitably lead to an unfair trial." *Nebraska Press Ass'n* v. *Stuart, supra* at 554.[29] Here, the disclosure of the affidavits will increase only marginally whatever prejudice against Sharpe may already exist: there have already been pervasive media reports of Sharpe's physical and verbal abuse of his wife. Whatever the source, or the merits of those reports, the disclosure now of three affidavits, the contents of which are largely repetitive, is unlikely to add much of anything to the risk of an unfair criminal trial.[30]

---

[28]"When the rights of the accused and those of the public come irreconcilably into conflict, the accused's Sixth Amendment right to a fair trial must . . . take precedence over the public's First Amendment right of access to pretrial proceedings." *In re Globe Newspaper Co.,* 729 F.2d 47, 53 (1st Cir. 1984).

[29]Sharpe argues that the Supreme Court has "revisited" its position in *Nebraska Press Ass'n* v. *Stuart,* 427 U.S. 539, 561 (1976), because it later stated that "[n]o right ranks higher than the right of the accused to a fair trial." *Press-Enterprise Co.* v. *Superior Court,* 464 U.S. 501, 508 (1984). The Court has not retracted the balancing test it espoused in *Nebraska Press Ass'n* v. *Stuart, supra.* It also noted in *Press-Enterprise Co.* v. *Superior Court, supra,* that "the primacy of the accused's right [to a fair trial] is difficult to separate from the right of everyone in the community" to have access to criminal proceedings. *Id.* The Court has continued to balance the First Amendment right of access to pretrial proceedings against a defendant's Sixth Amendment right to a fair trial even in cases not involving prior restraints on speech. See, e.g., *Press-Enterprise Co.* v. *Superior Court,* 478 U.S. 1, 15 (1986) ("The First Amendment right of access cannot be overcome by the conclusory assertion that publicity might deprive the defendant of [the right to an impartial jury]").

[30]We have carefully examined both the allegations of the three affidavits and the media reports in the record, and agree with the single justice that the additional information in the affidavits is merely "a difference in degree." For example, the media have already reported that (1) Sharpe subjected Karen Sharpe to "nearly three decades of emotional and physical abuse"; (2) Karen

Sharpe suggests that, despite the previous media coverage, the release of the affidavits will be especially prejudicial to him because the new source of information carries the "imprimatur of the Probate Court." He argues that potential jurors will also be biased by the emotional force of Karen Sharpe's own accusations. His concern — to the extent it has merit — is insufficient to tilt the balance in his favor. A document does not obtain greater validity merely because it is filed in court. The affidavits of Karen Sharpe might actually be viewed by potential jurors as self-serving, given the highly contentious nature of the Sharpes' divorce.

The single justice properly pointed out that, to the extent the disclosure of the affidavits did create any additional media coverage, there are remedies available to the judge presiding over the criminal trial to minimize any prejudicial impact on Sharpe.[31] History counsels that, in the face of significant hostile publicity surrounding a criminal case, jurors may be selected

Sharpe had suffered a broken nose, split lip, and black eyes as a result of his abuse; (3) Sharpe had at one time "stabbed [Karen Sharpe] in the head with a fork"; (4) Karen Sharpe had gone "to the hospital for wounds she suffered as a result of Sharpe's beatings," and that Sharpe forced her to lie about falling down a flight of stairs; (5) Karen Sharpe was "scared to death" of him, and eventually moved into a motel because "he came home with duct tape and hoses"; (6) Karen Sharpe had abruptly moved into the couple's new home in Wenham with her two young children because she feared Sharpe, and would not let him move in; (7) Karen Sharpe had obtained a protective order against him; (8) Karen Sharpe "feared her controlling husband would kill her" if she left him; (9) Sharpe "gobbled" Karen Sharpe's birth control pills to "enhance his gender-bending ways" and to "help[ ] his breasts get larger"; (10) he "was a cross-dresser"; and "liked to dress in drag behind the scenes"; (11) Karen Sharpe had photographs of Sharpe dressed in drag; (12) Sharpe "kept close ties to the transsexual community"; (13) Sharpe had all his body hair removed through laser surgery; (14) Sharpe had spent time in a psychiatric hospital against his will; and (15) Sharpe had a "prescription drug habit 'for years'" and "stole pain killers from his liposuction patients." See Police Hunt Doctor in Slaying of Wife — Kids, Babysitter in Home When Mom Gunned Down, Boston Herald, July 16, 2000, at 1; Her Dad Captured, She Seeks Justice — Daughter Laments Slaying of her Mother, Boston Globe, July 17, 2000, at B1; Doc's Dark Side: Sources: Wife Slay Suspect Was Drag Queen, Boston Herald, July 19, 2000; Gloucester Doctor Held Without Bail in Shooting, Boston Globe, July 19, 2000, at B3; Doctor Accused of Killing Wife Was a Cross-Dresser, Drug-Abuser, Associated Press Newswires, July 20, 2000; Dermatologist Sharpe Transferred to Bridgewater State Hospital, Boston Globe, July 21, 2000, at B6.

[31]The single justice said that she did not intimate whether such remedies might be appropriate. We reject Sharpe's contention that an appellate court

who are capable of, and do, reach an impartial decision based solely on the evidence at trial. See, e.g., *Commonwealth* v. *James*, 424 Mass. 770, 775-776 (1997) (aggravated rape and murder of young woman in public park by eight young men); *Commonwealth* v. *Colon-Cruz, supra* at 551 (murder of State trooper). That is the reason we recognize that "[a] defendant's right to a fair and impartial jury does not require that jury members have no prior knowledge of the crime." *Id.* Concern over pretrial publicity affecting the jury pool may be particularly acute where a homicide takes place in a small rural community. See, e.g., *Newspapers of New England, Inc.* v. *Clerk-Magistrate of the Ware Div. of the Dist. Court Dep't, supra* at 633, citing *Columbia Broadcasting Sys., Inc.* v. *United States Dist. Court,* 729 F.2d 1174, 1181 (9th Cir. 1983). That is not the case here. But if the judge at Sharpe's criminal trial determines that the jury pool in Essex County may be so tainted by pretrial publicity that Sharpe may not obtain a fair trial before an impartial jury, the judge has substantial discretion in deciding whether to order a change in venue. See Mass. R. Crim. P. 37 (b) (1), 378 Mass. 914 (1979). See also *Commonwealth* v. *Colon-Cruz, supra.*

The judge at Sharpe's criminal trial may also conduct an individual voir dire of prospective jurors concerning their exposure to pretrial publicity to ensure that each juror is able to render a fair and impartial verdict. See G. L. c. 234, § 28. See also *Commonwealth* v. *Clark, ante* 1, 6 (2000); *Commonwealth* v. *James, supra* at 776-777; *Commonwealth* v. *Bianco,* 388 Mass. 358, 368, *S.C.,* 390 Mass. 254 (1983); *Columbia Broadcasting Sys., Inc.* v. *United States Dist. Court, supra* at 1179 ("Recent highly publicized cases indicate that even when exposed to heavy and widespread publicity, many, if not most, potential jurors are untainted by press coverage"). The trial judge may also give explicit jury instructions during the trial that command the jurors to accord weight only to the evidence admitted at trial. See *Commonwealth* v. *Palmariello,* 392 Mass. 126, 139-142 (1984). Sharpe points to no specific factors that compel the conclusion that these and other remedies available to the trial judge will be ineffective or inadequate.

The single justice also correctly concluded that any privacy rights that Sharpe might claim did not warrant impounding the

that points to ameliorative measures available to a judge in a criminal trial is thereby usurping the discretionary powers of the trial judge.

affidavits. When the subject matter of publicity is of legitimate public concern, as it is here, there is no invasion of privacy. See *George W. Prescott Publ. Co.* v. *Register of Probate for Norfolk County*, 395 Mass. 274, 278 (1985), quoting Restatement (Second) of Torts § 652D comment d (1977). This is particularly true where the relief a party seeks is the impoundment of documents after there has already been extensive media coverage of the individuals and events at issue, as occurred here. See *George W. Prescott Publ. Co.* v. *Register of Probate for Norfolk County*, *supra*, citing Restatement (Second) of Torts *supra* at § 652D comment b. It is also by no means apparent that Sharpe ever had any privacy rights concerning the affidavits, or that an order impounding Karen Sharpe's affidavits would have withstood a challenge at the time they were filed. The affidavits were, after all, the equivalent of testimony in an open judicial proceeding. Impoundment of judicial records is not warranted simply because the parties elect to keep certain information shielded from public view. Rule 7 of the Uniform Rules on Impoundment Procedure. There is, therefore, no merit to his suggestion that his right of privacy should not be "diminished" or "transform[ed]" because the media thrust him onto the public stage after the death of his wife.

We may summarily dispose of Sharpe's contention that unsealing the affidavits will damage the privacy rights of his children. The two minor children have not contested the termination of the impoundment order, and made no claim before the single justice that their privacy interests will be damaged by further media coverage of the case. To the extent their views have been communicated through counsel representing the estate of Karen Sharpe, they apparently support termination of the impoundment order. See note 10, *supra*.

We remand this case to the single justice of the county court with instructions that she remand this case to the Probate and Family Court where judgment shall enter.

*So ordered.*