Lowy, David A., J.
INTRODUCTION
The defendant, Philip Chism, moves this court to impound the video recording and the corresponding transcript of his interview with the Danvers police in the early morning hours of October 23, 2013.[1] The defendant argues that the contents of the video recording and transcript are highly prejudicial and will not be admissible at trial. Further, the defendant contends that if the video recording and transcript are not impounded, disclosure to the public will result in irrevocable prejudice to the jury pool and threaten the defendant’s right to a fair trial. Third-parly interven-ers, Boston Globe Media Partners and Eagle Tribune Publishing Company, oppose impoundment of the materials, arguing that the public’s First Amendment right to view the contents of criminal proceedings must be preserved, and the potential prejudice arising from the dissemination of this evidence will not compromise the defendant’s right to a fair trial. After balancing the defendant’s Sixth Amendment right to a fair trial with the public’s First Amendment right to view the criminal proceedings, the defendant’s motion for impoundment must be denied for the following reasons.
DISCUSSION
“An order of impoundment may be entered by the court, after hearing, for good cause shown and in accordance with applicable law. In determining good cause, the court, shall consider all relevant factors, including, but not limited to, the nature of the parties and the controversy, the type of information and the privacy interests involved, the extent of community interest, and the reason(s) for the request.” Rule 7 of the Uniform Rules on Impoundment Procedure.
“(0]nly in the most extreme situations, if at all, may a State court constitutionally forbid a newspaper (or anyone else) to report or comment on happenings . . . which have been held in open court; and a similar rule would apply to court files otherwise unrestricted.” Boston Herald Inc. v. Sharpe, 432 Mass. 593, 604 (2000) (“Sharpe") (ellipses in original) (quotations omitted), quoting Ottaway Newspapers, Inc. v. Appeals Court, 372 Mass. 539, 547-48 (1977). “It is desirable that (judicial proceedings] should take place under the *424 public eye ... because it is of the highest moment that those who administer justice should always act under the sense of public responsibility, and that every citizen should be able to satisfy himself with his own eyes as to the mode in which a public duty is performed. Consistent with this principle, Massachusetts has long recognized a common-law right of access to judicial records.” Republican Co. v. Appeals Court, 442 Mass. 218, 222 (2004) (citations and quotations omitted) (alterations and ellipses in original).
The defendant has raised important issues including: whether he asserted his right to remain silent; whether his mother’s request for an attorney on his behalf was an effective invocation of the right to counsel; whether the defendant was denied an actual opportunity to consult with his mother concerning the decision to waive his right to remain silent and to have an attorney present during questioning; whether an emergency exception applies as to a portion of the interview; and whether the defendant’s statements were voluntary. There are numerous other issues involving the Topsfield police’s stop of the defendant and his subsequent statements to the Topsfield police. These issues will be addressed by the court relative to the court’s ruling on the defendant’s Motion to Suppress the video recorded interview.
“(T]he criminal trial historically has been open to the press and general public. [A]t the time when our organic laws were adopted, criminal trials ... had long been presumptively open. And since that time, the presumption of openness has remained secure.” Globe Newspaper Co. v. Superior Court, 457 U.S. 596, 605 (1982) (internal citations and quotations omitted) (alterations in original).
“(T]he right of access to criminal trials plays a particularly significant role in the functioning of the judicial process and the government as a whole. Public scrutiny of a criminal trial enhances the quality and safeguards the integrity of the factfinding process, with benefits to both the defendant and to society as a whole. Moreover, public access to the criminal trial fosters an appearance of fairness, thereby heightening public respect for the judicial process. And in the broadest terms, public access to criminal trials permits the public to participate in and serve as a check upon the judicial process — an essential component in our structure of self-government. In sum, the institutional value of the open criminal trial is recognized in both logic and experience.” Id. at 606 (footnotes omitted).
The court’s reasons for denying the motion to impound are straightforward. The defendant seeks to impound exhibits which, once entered, are court documents. “Under our common law, judicial records are presumptively available to the public.” Commonwealth v. Prescott, 463 Mass. 258, 262 (2012).
Whether the Motion to Suppress the defendant’s statements at the Danvers police department, in the early morning hours of October 23, is allowed or denied, in whole or in part, will inevitably involve an in-depth discussion of the statements the defendant seeks to suppress. Further, the statements will likely be revealed at oral argument. The statements are probative concerning the issue of voluntariness. Regardless of the court’s ruling on whether the Commonwealth has proven that the defendant waived his Miranda rights beyond a reasonable doubt, the issue of voluntariness will be reached. Therefore, if the motion to impound were allowed, the court would be left with two unsatisfactory options: the court could hear argument on the important issue of whether the Commonwealth has met its burden of proving volun-tariness beyond a reasonable doubt at side-bar and impound the record of that portion of the argument; alternatively, the court would be forced to speak in such cryptic terms that it would impair a robust discussion and leave the public distrustful of the process. Whatever the court’s decision on suppression might be, the public’s right to understand that decision is of constitutional dimension and central to the maintenance of our social compact. See Globe, 457 U.S. at 604-06.
At this early stage of the proceedings, it is the court’s sense, and only a sense, that the contents of the statement the defendant moves to impound will ultimately become the subject of motions in limine relative to expert testimony, regardless of how the Motion to Suppress is decided. In short, the court’s judgment is that the statements would become public prior to impanelment regardless of the court’s ruling on the Motion to Suppress. Given the size of the community, there is no concern that pretrial publicity, even if pervasive, would inevitably lead to a tainted jury pool or an unfair trial. See Commonwealth v. Toolan, 460 Mass. 452, 463 (2011).
The court acknowledges that release of the video recording and the transcript necessarily involves divulging inflammatory content. Denial of the Motion to Impound will mean that the selection of a fair and impartial juiy will be more challenging. However, this court is confident that twelve indifferent jurors will decide the facts of this case according to the law and the evidence. This courtis also equipped to ensure the defendant’s Sixth Amendment right to a fair trial is preserved and minimize any prejudicial impact on the defendant. See Sharpe, 432 Mass. at 610-11 (trial judges can minimize prejudicial impact by the media and preserve the defendant’s right to a fair trial through use of individual juror voir dire, explicit jury instructions and, ultimately, the discretion to change trial venues).
The First Amendment poses challenges every day for countless people and institutions. It poses a challenge for this court today in protecting the defendant’s right to a fair trial. But the First Amendment was not intended to make life easy. To paraphrase Thomas *425 Jefferson, the First Amendment is intended to allow democracy to thrive. When a court considers suppression of evidence under the Constitution, just as when it engages injudicial review and strikes down legislation, a court’s decision is, by its nature, insulated from the immediate crucible of the democratic process. The exacting scrutiny of the press in those circumstances in covering the courts and providing an unobstructed view of the proceedings, therefore, remains at the core of protecting ordered liberty, the rule of law, and ultimately not just democracy, but constitutional democracy itself.
ORDER
The defendant’s motion to impound the video recorded interview and the transcript of the interview is DENIED.

The video recording has been marked as Exhibit 18, and the transcript has been marked A for identification.