SUPREME JUDICIAL COURT 
 
 BENJAMIN TARIRI vs. COMMONWEALTH

 
 Docket:
 SJC-13716
 
 
 Dates:
 October 30, 2025
 
 
 Present:
 
 
 
 County:
 
 

 
 Keywords:
 Global Positioning System Device. Constitutional Law, Search and seizure, Privacy. Search and Seizure, Expectation of privacy. Privacy. Supreme Judicial Court, Superintendence of inferior courts.
 
 

       The petitioner, Benjamin Tariri, filed a
petition in the county court pursuant to G. L. c. 211, § 3, seeking relief from
the imposition of global position system (GPS) monitoring as a condition of
pretrial release.  A single justice
denied the petition, and Tariri appeals. 
We affirm.
      Background.  Tariri was initially charged in a complaint
with several crimes, including embezzlement and larceny.  The charges stem from activity that Tariri
engaged in while working as an attorney. 
In short, the Commonwealth alleges that he embezzled money from eight
different clients and solicited a fraudulent loan from a ninth client, totaling
close to $2 million.[1]  The day
after the complaint issued, Tariri was arrested at Logan International Airport,
after he had passed through security.  He
was attempting to board a flight to Iran and had no return ticket.[2]  Tariri was born in Iran, and although he has
lived in the United States for close to fifty years and has a wife and children
here, he recently spent six months in Iran. 
At his arraignment in the Boston Municipal Court, Tariri pleaded not
guilty, and a judge set cash bail in the amount of $50,000.  The judge later reduced that amount to
$30,000, which Tariri paid.  The judge
also imposed certain conditions of release, including that Tariri be subject to
GPS monitoring.  Additionally, the GPS monitoring
included an inclusion zone, i.e., Tariri's movements were limited to certain
areas.[3]  
      A grand jury subsequently indicted Tariri
for numerous counts of embezzlement, in violation of G. L. c. 266, § 57;
larceny over $250 from a person who is age sixty or older or who is disabled,
in violation of G. L. c. 266, § 30 (5); larceny over $1,200, in violation of G.
L. c. 266, § 30 (1); and attempting to commit a crime, in violation of G. L. c.
274, § 6.  At Tariri's arraignment in the
Superior Court, the judge and the parties discussed at some length both bail
and the imposition of GPS monitoring with an inclusion zone.  Ultimately, the judge set bail in the same
amount as had been set in the Boston Municipal Court -- $30,000 cash -- with
continued GPS monitoring with an inclusion zone to include Waltham, Watertown,
and Allston.  The basis for the latter
condition was, essentially, that Tariri had been arrested at Logan Airport
attempting to board a flight to Iran with no planned return, and the inclusion
zone, which again did not include any areas of Boston other than Allston, was
necessary based on Tariri's risk of flight.[4]
      Tariri subsequently filed a motion to
modify or vacate the GPS monitoring condition, which a different judge (motion
judge) allowed in part to enlarge the inclusion zone but otherwise denied.[5]  Tariri thereafter filed his G. L.
c. 211, § 3, petition in the county court, which the single justice
denied without a hearing on the basis that the trial court order imposing GPS
monitoring did not constitute an abuse of discretion or error of law.
      Discussion.  As a general matter, "[w]hen a party
appeals from an adverse judgment by the single justice under G. L.
c. 211, § 3, we review the single justice's order for clear error of law
or abuse of discretion."  Brangan v.
Commonwealth, 477 Mass. 691, 697 (2017), and cases cited.  Where the petition concerns a request for
bail relief, we also consider the propriety of the underlying bail order.  See id. 
"In reviewing both the single justice's judgment and the bail
judge's order, we must consider the legal rights at issue and independently
determine and apply the law, without deference to their respective legal
rulings."  Id., citing Boston
Herald, Inc. v. Sharpe, 432 Mass. 593, 603 (2000).  See Vasquez v. Commonwealth, 481 Mass. 747,
751 (2019) ("In effect, this means that we must address the same legal
issue presented to the single justice: 
whether the bail judge's decision to deny the defendant's bail request
involved an abuse of discretion or error of law").   
      "The imposition of GPS monitoring as
a condition of pretrial release is a search under art. 14" of the
Massachusetts Declaration of Rights. 
Commonwealth v. Norman, 484 Mass. 330, 335 (2020).  Because it is a search, and one conducted
without a warrant, it is "presumptively unreasonable and, therefore,
presumptively unconstitutional" (citation omitted).  Commonwealth v. Govan, 496 Mass. 124, 128-129
(2025).  "As a general matter, the
reasonableness of a search is assessed under the totality of the circumstances,
including the nature and purpose of the search and the extent to which the
search intrudes upon reasonable privacy expectations" (quotation,
citation, and alteration omitted).  Id.
at 129.  Although a defendant on pretrial
release maintains an expectation of privacy, it is "less than that of an
ordinary private citizen."  Id. at
130.  Where "the Commonwealth's
legitimate State interest in imposing GPS monitoring as a condition of pretrial
release outweighs the defendant's expectation of privacy . . . [the]
imposition of GPS monitoring [is] a reasonable -- and therefore constitutional
-- search under art. 14."  Id. at
135. 
      In the context of GPS monitoring as a
condition of pretrial release, the only legitimate government interests are
those authorized by statute.  Govan, 496
Mass. at 130, citing Norman, 484 Mass. at 336. 
The GPS monitoring condition, in short, "must be permissible under
G. L. c. 276, § 58, the applicable bail statute."  Norman, supra.  That statute, in turn, "contains three
references to conditions of release," the first of which is relevant here
and "states explicitly that conditions of release may be used to ensure a
defendant's return to court."  Id.  See Govan, supra at 131 ("ensuring a
defendant's appearance in court is a legitimate justification, which may be
advanced by imposing GPS monitoring as a condition of pretrial release").[6]
      Tariri raises several arguments why the
imposition of GPS monitoring with an inclusion zone violates his Federal and
State constitutional rights.  He argues,
among other things, that it is difficult for him to find work -- he has been
seeking to work as a delivery driver for an online food ordering and delivery
service, for example, but sometimes the deliveries fall outside of the
inclusion zone so he is unable to take those orders -- and that the inclusion
zone prevents him from seeing his wife and baby, who live in the East Boston
section of Boston.[7]
      In addressing Tariri's arguments, our
focus lies with whether the imposition of GPS monitoring advances the
legitimate governmental interest in ensuring Tariri's appearance in court
"to such a degree that it outweighs the intrusion on [Tariri's] privacy
occasioned by GPS monitoring, in light of both the intrusiveness of GPS
monitoring and [Tariri's] intermediate expectation of privacy as a defendant on
pretrial release."  Govan, 496 Mass.
at 131.  Although the Commonwealth's
interest in ensuring Tariri's appearance in court is unquestionably a
legitimate governmental interest, the Commonwealth must still "establish
how GPS monitoring, when viewed as a search, furthers [that]
interest[]."  Id. at 132, quoting
Commonwealth v. Roderick, 490 Mass. 669, 673 (2022).  To that end, "there must be
'particularized reasons for imposing GPS monitoring on [Tariri].'"  Govan, supra at 132-133, quoting Commonwealth
v. Feliz, 481 Mass. 689, 701 (2019), S.C., 486 Mass. 510 (2020).
      We conclude that, in the circumstances of
this case, the Commonwealth has shown particularized reasons why imposition of
GPS monitoring furthers the legitimate governmental interest in ensuring
Tariri's appearance in court.  Tariri has
been charged with embezzling close to $2 million from his clients.  According to the Commonwealth, Tariri raised
the cash bail money from his friends and family.  As the Commonwealth argued, the alleged
offenses reflect a lack of concern for other people's money (in the form of
alleged embezzlement from his clients), suggesting that cash bail alone would
not be sufficient to ensure his appearance in court.  Moreover, as the Commonwealth again argued,
Tariri presents an extreme risk of flight, where he maintains extensive ties to
another country and was apprehended at Logan Airport with a one-way ticket to
that country.    
      We also conclude that, again in the
circumstances presented here, the Commonwealth has demonstrated that the
imposition of the inclusion zone as part of GPS monitoring also furthers the
legitimate governmental interest in ensuring Tariri's appearance in court.  We note, first, that, to the extent that
Tariri argues that the inclusion zone prevented him from securing employment,
the motion judge expanded the inclusion zone to address this concern.  See note 5, supra.  
      Second, as to Tariri's argument that the
inclusion zone prevents him from seeing his wife and baby due to their
residence in East Boston, outside the inclusion zone, we conclude that
imposition of this inclusion zone nonetheless was justified to maintain a
distance between Tariri and Logan Airport. 
To begin with, Tariri may visit with his wife and baby within the
inclusion zone.  Moreover, and
importantly, at the time of Tariri's arraignment in the Superior Court, the
Commonwealth stated that Tariri had not, at least for some period of time
leading up to the arraignment, been in touch with his wife, even after he had
been released on bail.  Additionally,
again according to the Commonwealth, Tariri's wife indicated that she did not,
at that time, know where Tariri was living; they were not residing
together.  Tariri had also recently spent
six months in Iran, and there is no indication that his wife was there with
him.[8]
      Again, an inclusion zone that precludes
Tariri from entering East Boston furthers the aim of maintaining distance
between Tariri and Logan Airport due to Tariri's high risk of flight.  See note 4, supra.  Although Tariri argues that the inclusion
zone does not sufficiently further this interest because the zone permits him
to travel to other area airports, Logan Airport is the largest international
airport in the region.  It is also the
airport at which he was arrested when he was preparing to board an international
flight to Iran -- a country to which he has strong ties -- with no planned
return.  
      In the totality of the circumstances,
including in particular the evidence regarding the nature of the alleged
offenses, Tariri's risk of flight, and Tariri's lack of contact with and
separate residence from his wife in the period leading up to his arraignment,
the legitimate governmental interest in ensuring Tariri's appearance in court
outweighs Tariri's expectation of privacy. 
The imposition of GPS monitoring with an inclusion zone, in other words,
does not violate Tariri's Federal or State constitutional rights. 
      Conclusion.  In the circumstances, the motion judge, in
declining to vacate the imposition of GPS monitoring with an inclusion zone as
a condition of pretrial release, did not err or abuse his discretion.  Nor, in turn, did the single justice err or
abuse her discretion in denying Tariri's G. L. c. 211, § 3,
petition.
Judgment
affirmed.
      The case was submitted on briefs.
      Benjamin Tariri, pro se.
      Eva M. Badway, Assistant Attorney General,
for the Commonwealth.

footnotes

[1] Separately,
the petitioner's actions resulted in a Board of Bar Overseers investigation and
his eventual disbarment.  See Matter of
Tariri, 492 Mass. 1009, S.C., 493 Mass. 1019 (2023) and 496 Mass. 1029 (2025).

[2] There is no
indication in the record that Tariri was aware of the complaint at the time of
his arrest at Logan Airport.  The
Commonwealth itself stated that it had no reason to think that, prior to his
arrest, Tariri knew of the investigation that led to the criminal charges and
the issuance of the complaint against him.

[3] The initial
inclusion zone included only the city of Waltham.  While Tariri's case remained in the Boston
Municipal Court, the zone was expanded, first to include the city of Watertown
and then to include the Allston section of Boston as well.

[4] The
Commonwealth argued, and the judge appears to have agreed, that an inclusion
zone maintaining distance between Tariri and Logan Airport was necessary based
on inherent delays between when the probation department receives an alert of a
GPS violation and when it might reach a probationer or alert airport security
to be on the lookout for a probationer. 
In other words, if the inclusion zone were further expanded toward Logan
Airport, Tariri might reach the airport and depart from the jurisdiction before
the probation department had time to fully respond to an alert of a GPS
violation.  

[5] At the
hearing on Tariri's motion to modify or vacate the GPS monitoring condition,
the motion judge stated that he would expand the inclusion zone to include --
in addition to Waltham, Watertown, and Allston -- Brookline, Newton, Arlington,
Lexington, Bedford, Stoneham, Wilmington, Cambridge, Somerville, and the
Brighton and Roslindale sections of Boston. 
In so doing, the motion judge noted that the expansion was based on
economic need, i.e., to allow for a broader area in which Tariri might work or
seek employment.

[6] The other two
conditions of release identified in G. L. c. 276, § 58, which
are not relevant here, relate to imposing "stay away" or "no
contact" orders to protect alleged crime victims and potential witnesses,
and to ensuring the safety of alleged victims and the community from defendants
charged with domestic violence offenses. 
See Govan, 496 Mass. at 131.

[7] While
Tariri's appeal was pending in this court, a judge in the trial court modified
the inclusion zone to include, at least temporarily, Tariri's wife's home in
East Boston.  The trial court docket
indicates that Tariri "may reside at wife residence . . . from
9/7/25–10/17/25" and that a "[n]ew exclusion zone map" is
"on file with probation." 
Tariri filed an "update" with this court to provide information
regarding this modified condition.  He
did not provide the new "exclusion zone map" to which the trial court
docket refers.  Although Tariri states
that the trial court "narrowed the [e]xclusion [z]one . . . to
now only include Logan [A]irport," the docket entry indicates only that
Tariri could reside at his wife's address during the dates stated.  Tariri has since filed a motion in the trial
court to make this modified condition permanent, and that motion remains
pending.  Because it appears that the
modified condition applied only for a limited period of time, we address the
arguments that Tariri made regarding the inclusion zone prior to the recent
modification.

[8] Additionally,
as the Commonwealth suggested at Tariri's arraignment, there did not appear to
be anything preventing Tariri's wife from moving her own residence to a
location within the inclusion zone.  The
inclusion zone was, in any event, amended, at least temporarily, to allow
Tariri to reside with his wife in East Boston. 
See note 7, supra.