## COMMONWEALTH *vs.* KEITH WINFIELD.

Middlesex. November 8, 2012. - March 18, 2013.

Present: IRELAND, C.J., SPINA, CORDY, BOTSFORD, GANTS, DUFFLY, & LENK, JJ.

*Constitutional Law,* Access to court proceedings. *Court Reporter. Waiver.*

This court concluded that the right of access of the public to a trial does not
   apply to a court reporter's backup audiotape "room recording," where the
   court reporter had prepared a certified transcript that constituted the of-
   ficial record of the trial. [674-678]
A Superior Court judge did not abuse her discretion in denying a documentary
   film maker's motion for an order allowing access to a court reporter's au-
   diotape "room recording" of a trial, where the common-law presumption
   of public access did not apply to such an unofficial record; and where the
   judge, in weighing the risk of emotional distress to the victim and her fam-
   ily against the film maker's interest in using the trial witnesses' actual
   voices in a documentary film, determined that the interests of justice
   would not be served by giving the film maker such access. [678-684]
An argument made for the first time in an appellate reply brief was waived.
   [684]

INDICTMENTS found and returned in the Superior Court Depart-
ment on August 1, 2006.

A posttrial motion for an order allowing access to audio re-
cordings of trial testimony was heard by *Kathe M. Tuttman,* J.

The Supreme Judicial Court on its own initiative transferred
the case from the Appeals Court.

*Jonathan M. Albano* (*John Reinstein* with him) for Steve
Audette.

*Fawn D. Balliro Andersen,* Assistant District Attorney, for the
Commonwealth.

GANTS, J. The issue presented in this case is whether a judge
erred in denying a documentary film maker's motion for access
to an audiotape "room recording" of a trial made by a court
reporter where an official transcript of the trial had been prepared
and provided to the film maker. We conclude that, where the
court reporter's room recording is not the official record of the

trial and is not filed with the court or referenced in the court file, the film maker is not entitled to a copy under the public's right of access to criminal proceedings guaranteed by the First Amendment to the United States Constitution, as applied to the States through the Fourteenth Amendment to the United States Constitution, or under our common-law right of access to judicial records. We also conclude that the judge did not abuse her discretion in refusing to give the film maker access to the recording.

*Background.* In 2007, in the underlying case, a Superior Court jury convicted Keith Winfield of two counts of forcible rape of a child under the age of sixteen, indecent assault and battery of a child under the age of fourteen, and assault and battery of a child causing serious bodily injury. The Appeals Court affirmed the convictions. *Commonwealth* v. *Winfield*, 76 Mass. App. Ct. 716 (2010). Steve Audette, a film producer, is currently making a documentary film about the defendant's prosecution and convictions that, according to Audette, "will examine, among other things, [the defendant's] continued assertion of innocence in light of the evidence presented at trial."

The court reporter at trial was a "voice writer," who created a "voice-over recording" by repeating all that was said at trial into a tape recorder using a specially designed mask. She later prepared an official transcript of the trial from the voice-over recording she had made. The court reporter also made a separate audio room recording of the trial, apparently as a backup to the voice-over recording, that presumably captured all that was said at trial, including inflections, nuances, and pauses.

Audette purchased a copy of the trial transcript from the court reporter and also requested a copy of the court reporter's room recording. The court reporter informed Audette that she would not provide him with a copy of the room recording unless directed to do so by the court.

Audette filed a motion asking for an order directing the court reporter to provide him with a copy of the room recording of the trial on payment of the reasonable cost of copying the audiotape, and served it on the Commonwealth's and Winfield's counsel. Audette's motion claimed that access to the audio recording should be allowed pursuant to the right of access guaranteed by

the First Amendment and the common-law right of access to judicial records. He contended that he needed the room recording to provide those who view his documentary film with a meaningful opportunity to understand the evidence at trial by hearing the testimony from the mouths of the actual witnesses, rather than from actors reading the trial transcript.

After a thorough review of the various statutes and court rules governing court reporters and transcripts, as well as the Report of the Supreme Judicial Court's Study Committee on Trial Transcripts (2003) (Study Committee Report), the motion judge (who was not the trial judge) denied the motion.[1] The judge concluded that where, as here, a transcript of the trial is available, an individual is not permitted access to a court reporter's room recording because the recording is not a judicial record subject to a right of public access under the First Amendment or our common law. The judge also found that, even if the "room recording" were a judicial record, there was good cause because of the circumstances in this case to prohibit Audette from gaining access to it. Recognizing the issue of law to be one of first impression, the judge reported her decision to the Appeals Court, see Mass. R. Crim. P. 34, as amended, 442 Mass. 1501 (2004), and we transferred the case to this court on our own motion.

*Discussion.* "The First Amendment implicitly grants the public, including the press, a right of access to court trials." *Commonwealth* v. *Cohen (No. 1)*, 456 Mass. 94, 106 (2010), citing *Globe Newspaper Co.* v. *Superior Court*, 457 U.S. 596, 604-606 (1982). A public trial "enhances both the basic fairness of the criminal trial and the appearance of fairness so essential to public confidence in the system." *Press-Enterprise Co.* v. *Superior Court*, 464 U.S. 501, 508 (1984) (*Press-Enterprise I*), citing *Richmond Newspapers, Inc.* v. *Virginia*, 448 U.S. 555, 569-571 (1980). The right of public access, however, is not absolute; the strong constitutional presumption in favor of a public trial may be overcome only by a case-specific finding by a judge that closure of the court room "is essential to preserve higher values and is narrowly tailored to serve that interest."

---

[1] The trial judge had retired before the motion was filed.

*Commonwealth* v. *Cohen, supra* at 107, quoting *Press-Enterprise I, supra* at 510.[2]

The First Amendment right of access to court trials includes the right to purchase a transcript of the court proceeding that was open to the public. See *Press-Enterprise Co.* v. *Superior Court,* 478 U.S. 1, 13-15 (1986) (*Press-Enterprise II*). In *Press-Enterprise II,* where the United States Supreme Court held that the First Amendment right of access to criminal proceedings applies to preliminary hearings, the Court equated the right of access to attend the hearing with the right to obtain a transcript of the hearing, and recognized that denial of a request for the transcript "would frustrate what we have characterized as the 'community therapeutic value' of openness." *Id.* at 13, quoting *Richmond Newspapers, Inc.* v. *Virginia, supra* at 570 (plurality opinion). See *Gannett Co.* v. *Depasquale,* 443 U.S. 368, 393 (1979) (where transcript of closed suppression hearing was made available after "danger of prejudice had dissipated," press and public had "a full opportunity to scrutinize the suppression hearing" in lieu of attending hearing). Consequently, the First Amendment right of access to the court room provides not only a strong presumption that the public is entitled to attend a criminal trial but also a strong presumption that those who were unable to attend may learn what occurred at the trial by purchasing a transcript of the proceeding.

Our statutes, rules, and standing orders ensure that there is an official record of a criminal trial that may be made available to anyone who wishes to learn what transpired. In the Superior Court, where the defendant was tried, a record of a criminal proceeding is made by a court reporter, where one is available. Standing Order 2-87 of the Superior Court, Mass. Ann. Laws Court Rules, at 1075 (LexisNexis 2012-2013). A court reporter is a "shorthand reporter or voice reporter" who is a sworn

---

[2] "[T]he determination must satisfy four requirements articulated by the [United States] Supreme Court: '[1] the party seeking to close the hearing must advance an overriding interest that is likely to be prejudiced, [2] the closure must be no broader than necessary to protect that interest, [3] the trial court must consider reasonable alternatives to closing the proceeding, and [4] it must make findings adequate to support the closure.' " *Commonwealth* v. *Martin,* 417 Mass. 187, 194 (1994), quoting *Waller* v. *Georgia,* 467 U.S. 39, 48 (1984). See *Commonwealth* v. *Cohen (No. 1),* 456 Mass. 94, 107 (2010).

officer of the court appointed by the justices of the Superior Court to make "a verbatim record" of a trial. G. L. c. 221, §§ 82, 91D (*a*). On request, a court reporter shall "furnish a transcript of his notes, or any part thereof, taken at a trial or hearing," at a statutorily fixed price per page. G. L. c. 221, § 88. That transcript, "when verified by the certificate of such stenographer," is admissible as evidence of the testimony given at the trial or hearing, G. L. c. 233, § 80, and "shall constitute" the record of what was said at the trial or hearing on appeal. Mass. R. A. P. 8 (a), as amended, 378 Mass. 932 (1979).

"Historically, court reporters penned shorthand notes of court proceedings on paper, which they later transcribed with a typewriter." Study Committee Report, *supra* at 14. Today, there are two types of court reporters: stenotypists and voice writers. *Id.* A stenotypist makes a record of court proceedings through the use of a stenotype machine that records a series of strokes indicating shorthand phonetic symbols, and "later prepares a transcript from the raw stenotype machine notes." *Id.* at 15. A voice writer dictates the proceedings into a tape recorder while wearing a specially designed mask, and later prepares a transcript from the dictated tape recording. *Id.* at 14-15. Neither a stenotypist nor a voice writer is obliged to make a room recording of court proceedings, but the court reporter in this case chose to do so, apparently to serve as a backup to her voice recording and to ensure the accuracy of her transcript. "[C]ourt reporters purchase, own, and maintain their own equipment (both for in-court recording and at-home transcribing)," *id.* at 17-18, so we presume that the court reporter in this case used her own tape recorder to make the room recording. The transcript she prepared, not the room recording, was the official record of the trial, and the room recording was kept in her custody, not placed in the court file.

Where a court reporter is not available in a Superior Court trial or hearing, a verbatim record of the proceeding is made with an electronic recording device operated by the session clerk or another employee designated by the clerk-magistrate, and a copy of the original recording is available to anyone for a fee on request, unless the proceeding was closed to the public or the recording has been impounded. Standing Order 2-87 of

the Superior Court, *supra* at 1075-1077. Where an appeal is brought, a copy of the electronic recording is used to prepare the designated transcript of the proceedings. See Mass. R. A. P. 8 (b) (3), as amended, 430 Mass. 1601 (1999). In the absence of a certified transcript, the electronic recording is the official record of the proceeding. See G. L. c. 218, § 27A (*h*) (where no court reporter is provided, "[t]he original recording of proceedings in the Boston municipal court department or the district court department made with a recording device under the exclusive control of the court shall be the official record of such proceedings").

Audette contends that his First Amendment right of access to the trial and to the trial transcript also includes a right of access to the room recording made by the court reporter. If Audette had attended the trial, he would have had no constitutional right to make an audio recording of the trial. "[T]here is no constitutional right to bring cameras into or to make audio or video recordings of court room proceedings." *Commonwealth* v. *Barnes*, 461 Mass. 644, 651 (2012), citing *Nixon* v. *Warner Communications, Inc.*, 435 U.S. 589, 610 (1978).[3] In those cases where the right of access has been equated to the right to a transcript, the transcript has been the official record of the proceeding. We know of no case where the First Amendment right of access has been extended to include a right to an

_____

[3]Nor would Audette be entitled to make an audio recording of the trial under the rules of the Superior Court, which require prior judicial authorization before anyone may use a recording device in a court room. Rule 17 of the Rules of the Superior Court (2012). Our recently amended S.J.C. Rule 1:19, as amended, 461 Mass. 1301 (2012), permits "the news media for news gathering purposes and dissemination of information to the public," with prior authorization from the court room judge or magistrate, to make video and audio recordings of a trial, but with significant restrictions. First, "[a] judge may limit or temporarily suspend such access by the news media if it appears that such coverage will create a substantial likelihood of harm to any person or other serious harmful consequence." S.J.C. Rule 1:19 (2) (a). Second, even where there is no substantial likelihood of harm, "[a] judge shall not permit," inter alia, video or audio recording by news media "of voir dire hearings concerning jurors or prospective jurors" or "of bench and side-bar conferences," even though the public has a right to be present in the court room during these hearings and conferences, and they are included in the official record of the trial. See S.J.C. Rule 1:19 (2) (b) (i), (ii); *Commonwealth* v. *Cohen (No. 1)*, 456 Mass. 94, 106 (2010), citing *Presley* v. *Georgia*, 558 U.S. 209, 212-213 (2010) ("public trial right applies to jury selection proceedings").

electronic recording of the trial where, as discussed *infra*, that recording is made by a court reporter but is not the official record of the trial and is not referenced or contained in the court file. Nor do we see the wisdom of extending the First Amendment right of access to include unofficial electronic recordings where an official transcribed record of the trial is available that accurately reflects what happened during the public trial. While the right of access of the public to a trial may ensure access to a room recording that, because of the absence of a court reporter, is the official record of the trial, it does not apply to a backup room recording where, as here, a court reporter prepared a certified transcript of the trial that constitutes the official record of the trial.

Audette also contends that the room recording is a judicial record, and that he is entitled to a copy under our long recognized common-law right of access to judicial records. *New England Internet Café, LLC* v. *Clerk of the Superior Court for Criminal Business*, 462 Mass. 76, 82-83 (2012) (*New England Internet Café*), quoting *Republican Co.* v. *Appeals Court*, 442 Mass. 218, 222 (2004) (*Republican Co.*). "Under our common law, once a document is filed in court, . . . it is a public record unless a statute or court rule directs its impoundment" for "good cause shown." *Globe Newspaper Co., petitioner*, 461 Mass. 113, 120 (2011) (*Globe Newspaper Co.*). See *Boston Herald, Inc.* v. *Sharpe*, 432 Mass. 593, 605-608 (2000) (*Boston Herald*); *Newspapers of New England, Inc.* v. *Clerk-Magistrate of the Ware Div. of the Dist. Court Dep't*, 403 Mass. 628, 631 (1988), cert. denied, 490 U.S. 1066 (1989) (*Newspapers of New England, Inc.*). This presumption of public access to judicial records allows the public and the media to develop a full understanding of a judicial proceeding so that they may "keep a watchful eye" on the judicial system. *Boston Herald, supra* at 606, quoting *Nixon* v. *Warner Communications, Inc., supra* at 598. See *Rosado* v. *Bridgeport Roman Catholic Diocesan Corp.*, 292 Conn. 1, 34-35, cert. denied sub nom. *Bridgeport Roman Catholic Diocesan Corp.* v. *New York Times Co.*, 558 U.S. 991 (2009) (*Rosado*), citing *United States* v. *Amodeo*, 71 F.3d 1044, 1048 (2d Cir. 1995) ("Public monitoring of the judicial process through open court proceedings and records enhances confidence in the

judicial system by ensuring that justice is administered equitably and in accordance with established procedures").

The presumption of public access, however, applies only if the room recording is a judicial record. See *Rosado, supra* at 37 ("when determining whether a document should be open to the public, the threshold question under the common law is whether the document constitutes a 'judicial document' "); *Commonwealth* v. *Upshur*, 592 Pa. 273, 282 (2007) ("threshold question in any case involving the common law right of access is whether the documents sought to be disclosed constitute public judicial documents" [quotation and citation omitted]). See also *In re Boston Herald, Inc.*, 321 F.3d 174, 180-181 (1st Cir. 2003), quoting M.A. Franklin, D.A. Anderson, & F.H. Cate, Mass Media Law 770 (6th ed. 2000) ("One question that runs through many of these cases is whether the materials at issue are judicial records. If the court decides that they are not, there appears to be no right of access under either the common law or the First Amendment").

Where a document or recording is kept in the court file, it is a judicial document under our case law that is accessible to the public unless impounded. For example, in *Globe Newspaper Co., supra* at 123, we concluded that the common-law presumption of public access applied to an inquest report once it was filed in the Superior Court. Similarly, in *New England Internet Café, supra* at 83, citing *Republican Co., supra* at 222-223, we recognized that a search warrant affidavit becomes a presumptively public document only after the warrant is returned because the affidavit is filed in the court with the return. See *Newspapers of New England, Inc., supra* at 631. See also *Leucadia, Inc.* v. *Applied Extrusion Techs., Inc.*, 998 F.2d 157, 161-162 (3d Cir. 1993), and cases cited ("Numerous other courts have also recognized the principle that the filing of a document gives rise to a presumptive right of public access"). See generally *Rosado, supra* at 38-42 (describing three alternative approaches to determining what constitutes judicial document, all of which require filing document with court).

A certified transcript of a criminal proceeding is filed with the court and is presumptively a public document. See *New England Internet Café, supra*. Where an electronic recording of

a proceeding is made in the absence of a court reporter, the court file contains either the recording itself or a log entry that would allow the public to know the beginning and end points of the proceeding so that they may obtain a copy of the recording. See Superior Court Standing Order 2-87, *supra*; Rule 211 (A) (2), (5) of the Special Rules of the District Courts (LexisNexis 2012-2013). But a voice recorder's backup room recording is not filed with the court; nor does the court file even reflect its existence. Rather, it is retained by the court reporter to assist in ensuring the accuracy of any transcript the court reporter may be asked to prepare of the proceeding.

While a backup room recording is not filed with the court, it is nonetheless the property of the court. See Superior Court Regulations Governing Court Reporters § 25, at 15 (1973) ("All stenotype tapes, tape recordings and original shorthand notebooks containing any notes of the trial or hearing of a case shall be the property of the court"). Therefore, a judge has the authority to order the court reporter to provide designated persons with access to the room recording, for instance where the court reporter has failed timely to prepare a transcript or where the recording may be needed to resolve a dispute regarding the accuracy of the transcript.

We need not determine whether the presumption of public access could ever apply to a document or recording that is the property of the court but is not found or referenced in the court file.[4] We need only determine here whether the presumption should apply to the backup room recording in this case. See, e.g., *United States* v. *Gonzales*, 150 F.3d 1246, 1250, 1263 (10th Cir. 1998), cert. denied sub nom. *Albuquerque Journal* v. *Gonzales*, 525 U.S. 1129 (1999) (documents submitted to court for determination of criminal defendant's indigent status were administrative documents "to which there is no right of access under the common law").

In reaching this determination, we look to whether a record

---

[4]We note that, in *Commonwealth* v. *Silva*, 448 Mass. 701, 702-703, 707 n.11, 710 (2007), we assumed without deciding that a document containing the names of empanelled jurors in a murder trial was a "judicial record" even though it was not filed with the court, and then determined that the judge had good cause to impound the list of names.

that is not kept in the court file is nonetheless so important to public understanding of the judicial proceeding that it should be presumed to be public, so that the public may "assume a significant, positive role in the functioning of the judicial system." *Boston Herald, supra* at 607. Where the court file includes or reflects an official record of the proceeding, whether that be a certified transcript or an electronic recording made by the session clerk, we conclude that a room recording does not satisfy this test. Where an official record of the proceeding is available to the public, a presumption of public access to an unofficial record is more likely to generate public confusion than to aid public understanding. The appropriate vehicle for the public to monitor court proceedings is the official record, not a backup room recording that is used to assist in ensuring the accuracy of the official record.

Our conclusion that the backup room recording in this case is not a judicial document entitled to the presumption of public access does not mean that a member of the public may not request access to the recording. It merely means that, in considering such a motion, the burden is not on the opponent of the motion to overcome the presumption of public access by showing good cause to impound the presumptively public recording. See *Globe Newspaper Co., supra* at 121, citing *Republican Co., supra* at 223 & n.8 ("Although the [U]niform [R]ules [of Impoundment Procedure] do not claim to govern impoundment in criminal cases, . . . we have applied the good cause standard to the impoundment of documents filed in criminal cases"). Rather, the burden rests with the proponent of the motion to show why the interests of justice would be served by making a document that is not presumptively public available to the public in this particular case. We review the judge's decision for abuse of discretion. *Commonwealth* v. *Powell*, 453 Mass. 320, 328 (2009) (abuse of discretion standard applied to judge's finding regarding "interests of public justice").

Here, the judge found that the room recording was not a judicial record but also found that, even if it were, and even if the Commonwealth needed to show good cause to impound the recording, the Commonwealth had met that burden. In so finding, the judge recognized that she "must take into account all

relevant factors, 'including, but not limited to, the nature of the parties and the controversy, the type of information and the privacy interests involved, the extent of community interest, and the reason for the request.' " *Boston Herald, supra* at 604 n.22, quoting Rule 7 of the Uniform Rules on Impoundment Procedure, Mass. Ann. Laws Court Rules, Rules of the Trial Court, at 925 (LexisNexis 2012-2013). See *Globe Newspaper Co., supra* at 120. The judge noted that "Audette seeks the audio recording because he believes that simply having actors recite the transcribed testimony will be insufficient to provide viewers with a meaningful opportunity to understand and to evaluate what took place in court." The judge found that Audette's interest was outweighed by the Commonwealth's reasons for prohibiting access: "hearing the testimony of family members in their actual voices would be disruptive to any peace of mind the child victim and her family have managed to achieve since the crime occurred in 2005." The judge recognized that the Commonwealth's prediction of disruption to the peace of mind of the child victim and her family did not come from discussions with the victim or her family, because the Commonwealth had not informed the victim and her family of Audette's request "to avoid any anguish by dredging up the memories of this traumatic event."

Audette claims that the judge abused her discretion in finding good cause without conducting an evidentiary hearing at which she would hear directly from the victim and her family. If the room recording were a presumptively public judicial document where the burden of proving good cause rested with the Commonwealth, we might agree that the Commonwealth's prediction of disruption to the peace of mind of the victim and her family would be inadequate alone to support a finding of good cause to impound the document. See *Republican Co., supra* at 223, quoting *Commonwealth* v. *Blondin,* 324 Mass. 564, 571 (1949), cert. denied, 339 U.S. 984 (1950) ("exercise of the power to restrict access . . . must recognize that impoundment is always the exception to the rule, and the power to deny public access to judicial records is to be 'strictly construed in favor of the general principle of publicity' "). But the room recording is not a judicial document, and therefore the Com-

monwealth does not bear the burden of showing good cause to impound it; rather, the burden rests with Audette to show that, after balancing the relevant considerations, the interests of justice are served by his gaining access to the room recording.

In deciding whether the judge abused her discretion in finding that the interests of justice would not be served by providing Audette with a copy of the room recording, we are persuaded that the extraordinary facts of this case provide support for the Commonwealth's prediction of disruption to the peace of mind of the victim and her family. The two-year-old victim in this case suffered second- and third-degree burns to her genitals and anus, as well as a large skull fracture on the back of her head, with bleeding at that location around her brain. *Commonwealth* v. *Winfield*, 76 Mass. App. Ct. 716, 719 (2010). The pattern of burns to her anus were consistent with having been caused by a hot instrument that was the size and shape of a small curling iron, and such a curling iron was in the bathroom of the defendant's home. *Id.* at 722. The defendant was married to the victim's aunt, and the injuries were sustained three days after the defendant and his wife began providing day care to the victim while the mother was at work. *Id.* at 717-718. In light of these facts, the judge did not abuse her discretion in crediting the Commonwealth's prediction that the victim and her family may suffer renewed emotional distress were they to learn that the actual voices of the witnesses will be heard in the documentary film, even if they chose not to watch the film and even though the victim did not testify at trial. See *New York Times Co.* v. *National Aeronautics & Space Admin.*, 782 F. Supp. 628, 631 (D.D.C. 1991) (denying release of recording of voices of Space Shuttle Challenger's astronauts immediately before their death, finding that "[e]xposure to the voice of a beloved family member immediately prior to that family member's death is what would cause the Challenger families pain").

We conclude that the judge did not abuse her discretion in weighing the risk of emotional distress to the victim and her family against Audette's interest in using the witnesses' actual voices in his documentary film and finding, in essence, that the interests of justice would not be served by giving Audette access to the room recording of the testimony at trial. Where

Audette already had the transcript of the trial, and where release of the room recording posed a material risk of emotional distress to the victim and her family in this extraordinary case, the judge's decision to deny release of the recording was not an abuse of discretion.[5]

Finally, we address Audette's argument, made for the first time in his appellate reply brief, that the judge's denial of his motion for access must be reversed because it constitutes an unconstitutional prior restraint. By not raising this argument in his motion, and not raising it in his initial appellate brief, Audette has waived the argument. See *Police Dep't of Salem* v. *Sullivan*, 460 Mass. 637, 640-641 (2011). Even if it were not waived, however, the argument would fail because the judge's order does not constitute a prior restraint. See *Commonwealth* v. *Barnes*, 461 Mass. 644, 651 (2012), quoting *Alexander* v. *United States*, 509 U.S. 544, 550 (1993) ("term 'prior restraint' is used 'to describe administrative and judicial orders forbidding certain communications when issued in advance of the time that such communications are to occur' "). The court reporter informed Audette that she would not release the room recording without the approval of the court. The judge did not order the court reporter not to provide Audette with a copy of the room recording; the judge simply denied the motion that sought to compel the court reporter to provide a copy to Audette. Cf. *Commonwealth* v. *Barnes*, *supra* at 650-653 (constitutional doctrine of prior restraint applies to court orders restricting dissemination of recordings of court proceedings made by and already in possession of radio station).

*Conclusion.* We affirm the judge's order denying Audette's

[5]We note that Steve Audette argued on appeal that he needs the room recording for his documentary film because the transcript reported only what the trial judge said in response to a disturbance in the court room that occurred after the jury announced the guilty verdicts, and did not reflect the nature, source, or details of the disturbance. Audette, however, did not make this argument to the motion judge when he sought access to the room recording, and the judge consequently did not address it. We take no position as to whether Audette would have good cause to obtain access to that portion of the tape recording that reflected the immediate aftermath of the jury's announcement of their verdicts.

motion for an order compelling the court reporter to provide him a copy of the room recording.

*So ordered.*