NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-11578


COMMONWEALTH  vs.  NATHANIEL FUJITA.



Middlesex.      May 6, 2014. - January 27, 2015.

Present:  Spina, Cordy, Botsford, Gants, Duffly, & Lenk, JJ.[1]


Constitutional Law, Jury, Public right, Access to court
    proceedings.  Jury and Jurors.  Practice, Criminal, Jury
    and jurors, Record.  Impoundment.  Supreme Judicial Court,
    Superintendence of inferior courts.



Indictments found and returned in the Superior Court
Department on August 4, 2011.

Following entry of an order on a posttrial motion for
access to the jury list by Peter M. Lauriat, J., review of the
order was sought by a nonparty from a single justice of the
Appeals Court.

The matter was reported to a panel of the Appeals Court by
Mark V. Green, J.  The Supreme Judicial Court on its own
initiative transferred the case from the Appeals Court.

_____

[1] This case was argued before a panel that included the
Honorable Roderick L. Ireland prior to his retirement as Chief
Justice of this court.  The result of that argument was an order
of remand to the trial court.  After the response to that order
of remand, the Honorable Ralph D. Gants participated in the
deliberation on this case and authored his separate opinion
subsequent to his appointment as Chief Justice of this court.

Jonathan M. Albano for Globe Newspaper Company, Inc.
Eva M. Badway, Assistant Attorney General, for the Attorney General, intervener.

CORDY, J.  This appeal arises out of a Superior Court judge's ruling on a motion by the Globe Newspaper Company, Inc. (Globe), seeking postverdict access to the "jury list" containing the names and addresses of the jurors who served at the trial of Nathaniel Fujita on charges of murder in the first degree and assault and battery by means of a dangerous weapon. The trial began on February 11, 2013.  On March 1, while the trial was ongoing, the Globe filed its motion to obtain the names and addresses of the jurors immediately following entry of the verdict, for the purpose of ascertaining their willingness to discuss the trial.[2]  On March 7, 2013, the jury returned verdicts of guilty.  Seven days later, the trial judge held a hearing on the Globe's motion.  On March 26, he ruled that he would send letters to the jury asking if they were "amenable" to speaking to the press, and would permit disclosure only of the names and addresses of those jurors who responded affirmatively to his letter.  On April 16, 2013, presumably at the judge's direction, the Superior Court clerk's office provided the Globe

_____

[2] The Commonwealth apparently filed an opposition to the motion filed by the Globe Newspaper Company, Inc. (Globe), citing the "privacy interests of the jurors."  The Commonwealth has not filed a brief in this appeal, but the Attorney General has appropriately filed a brief and supplemental record appendix as intervener.  See note 3, infra.

with the names and addresses of two jurors willing to speak to the press, along with instructions that the Globe was to "use this information only for the purpose stated in [its] motion" and "not to disseminate this juror information to other news agencies or third persons."

The Globe filed a petition for relief from the judge's ruling with a single justice of the Appeals Court pursuant to G. L. c. 231, § 118.  The single justice initially denied the petition, but on reconsideration reported it to a panel of the Appeals Court.[3]  We transferred the petitioner's appeal to this court on our own motion.

After oral argument, we remanded the case to the Superior Court judge for findings regarding questions about the creation and retention of any list of jurors empanelled to render a verdict in the case.[4]

---

[3] The single justice of the Appeals Court also ordered that the Attorney General be notified of the Globe's petition and be given an opportunity to be heard.  See Commonwealth v. Silva, 448 Mass. 701, 706 (2007).  The Attorney General then proceeded as an intervener.

[4] More specifically, the case was remanded to the Superior Court for findings regarding the following questions:

"1.  In what form, if any, were the names and addresses of the jurors kept for use during the trial?  If the names and addresses were kept, by whom were they kept?

"2.  From what sources and by whom was information about juror names and addresses assembled?

"3.  Was there a "jury list" created?  If so, by whom?

For the reasons more fully set forth herein, we conclude that the public's long-term interest in maintaining an open judicial process, as embodied in the United States Constitution and Massachusetts common law, requires that a list identifying the names of jurors who have been empanelled and rendered a verdict in a criminal case be retained in the court file of the case and be made available to the public in the same manner as other court records. Only on a judicial finding of good cause, which may include a risk of harm to the jurors or to the integrity of their service, may such a list be withheld.[5] Insofar as the only basis for the order in this case was the judge's aversion to exposing jurors to press interviews and the personal preferences of the jurors, his order must be set aside in part, and a list identifying the names of jurors (without addresses) be disclosed.[6]

---

"4. Was this information made part of the court file in this case? If so, when?

"5. What is the custom and practice of retaining such information, whether in the court file or some other file?"

[5] Before making such a list available, the trial judge may conduct a hearing with respect to whether good reason exists to impound the list.

[6] We also conclude that the limitation on the further dissemination of the juror names constituted a prior restraint on the press forbidden by the First Amendment to the United States Constitution and art. 16 of the Massachusetts Declaration of Rights, and it also must be set aside.

Discussion.  It is beyond debate that, absent extraordinary circumstances,[7] the identities of jurors empanelled to serve at criminal trials are presumptively public under long-standing Massachusetts law, practice, and tradition, even in high-profile and contentious cases.[8]

By statute, the lists of all jurors summoned to jury service each month in every court, containing the "name, address and date of birth of each juror," are public records "available

---

[7] See Commonwealth v. Angiulo, 415 Mass. 502, 527 (1993) ("The due process clause precludes the empanelment of an anonymous jury at a criminal trial unless anonymity is necessary to protect the jurors from harm or improper influence").

[8] For example, jury selection in the 1770 prosecutions of the British soldiers charged with the Boston Massacre was open to the public, and the identities of the jurors who acquitted the soldiers were known to the community.  See 3 Legal Papers of John Adams 17-19, 49 n.1, 99-100 (L. Wroth & H. Zobel eds. 1965).  Similarly, in the 1806 trial of Thomas Selfridge, a prominent Boston attorney accused of shooting and killing the son of a political rival in the middle of the day on State Street, the jurors were drawn and publicly announced at the trial -- the first being Paul Revere (who went unchallenged) -- and were listed in the publicly available reports of the proceeding.  See, e.g., Trial of Thomas O. Selfridge, Att'y at Law, Before the Hon. Isaac Parker, Esquire, For Killing Charles Austin on the Public Exchange, in Boston, August 4th, 1806, at 9 (Russell & Cutter, Belcher & Armstrong, Oliver & Munroe, and William Blagrow, 1807) (juror empanelment on Dec. 23, 1806). Similarly, in the 1849 trial of Professor John W. Webster for the murder of Dr. George Parkman (one of the most intensely followed and reported murder trials in the United States at the time), the jurors' names were publicly drawn at the beginning of the trial and published in special editions of the newspapers of the time.  See, e.g., Trial of Professor John W. Webster for the Murder of Dr. George Parkman in the Medical College, at 6 (Boston Herald Steam Press, 1850) (listing names of jurors selected for trial).

upon request for inspection by parties, counsel, their agents, and members of the public."  G. L. c. 234A, § 67.  Under Federal jurisprudence, there is also a constitutional right of public access to court proceedings, including juror empanelment proceedings.  See Press-Enterprise Co. v. Superior Court, 464 U.S. 501, 507-510 (1984); Commonwealth v. Cohen (No. 1), 456 Mass. 94, 106-107 (2010).  This right is grounded in both fair trial and First Amendment principles.  Cohen (No. 1), supra at 106.  In addition, in Massachusetts, we have "long recognized a common-law right of public access to judicial records." Republican Co. v. Appeals Court, 442 Mass. 218, 222 (2004). Together, these rights are intended to ensure and instill public confidence and trust in our system of justice, and in the integrity and fairness of its proceedings.

It is also beyond debate that the identities of the jurors empanelled to decide a case at some point become known to the court and become part of the court record in the case.  This often happens as it did here, during the individual voir dire of the potential jurors, when jurors are identified not just by their assigned juror numbers, but also by their names.  If disclosed during the empanelment process, the information is

duly recorded by the court reporter or recording system, and is later available for transcription.[9],[10]

Whether or not the names of the sitting jurors publicly emerge during the empanelment process, there is little doubt that court officials assemble a tangible list of their identities for use during the trial.  Historically, these "juror lists" have been included and can be found in the court files of closed cases that proceeded to trial.  See Hindus, Hammett, & Hobson, Massachusetts Superior Court Files, 1859-1959 (1980) (finding that such files "usually include a list of jurors").  See also C. Menand, A Guide to the Suffolk County Inferior Court of Common Pleas 13 (1981) ("Juror lists appear regularly among the papers after 1797 and are filed . . . at the beginning of the case file papers for each term").

On remand, the judge found that several such lists had, in fact, been created, but were neither preserved nor included in

---

[9] In his decision on the Globe's motion, the judge observed that "[t]hroughout the trial of this matter, justice required that the names of the jurors be kept from public access to protect them from outside influences that could jeopardize the parties' rights to a fair trial," citing In re Globe Newspaper Co., 920 F.2d 88, 90 (1st Cir. 1990), and it appears that during their empanelment process the names of the jurors were only mentioned at their individual voir dire examination done at sidebar and out of the hearing of the public in attendance.

[10] It is not always the case that the names rather than the numbers assigned to jurors are disclosed, and therefore transcribed by the court reporter during the empanelment process.

the case file.  First, there was a "jury [e]mpanelment sheet"
containing the names and badge numbers of all prospective jurors
sent to the session for empanelment.  This list did not include
addresses.  It was used by the session clerk to mark the jurors
who were sworn, excused, or not reached.  This list was returned
to the jury pool office after the jury had been selected, and
not retained for inclusion in the court file of the case.
Second, the session clerk created a separate "Daily Report of
Juror Attendance," listing the empanelled jurors' names and
badge numbers but not their addresses.  This list was used to
record daily juror attendance.[11]  It was also returned to the
jury pool office each day and not retained for the court file of
the case.  Finally, the session court officers prepared a list
of empanelled jurors and their telephone numbers, which was
provided to the session clerk, and was to be used in the event
there was a need to contact jurors during the trial, for
example, if a juror failed to appear or if the court session
needed to be cancelled.  This list was destroyed at the end of
the trial.[12]

---

[11] This list was created by the session clerk both in
electronic and paper forms.

[12] The judge also maintained copies of the confidential
juror questionnaires previously completed by the jurors who were
empanelled on the jury.  The questionnaires are not public
records, G. L. c. 234A, § 23, and were appropriately destroyed
after the trial.

In deciding this case, we are compelled to decide not only whether a list of jurors was maintained in the court file of the case, thus becoming a judicial document accessible to the public unless impounded, Commonwealth v. Winfield, 464 Mass. 672, 679 (2013), but also whether, if not, some form of a jury list should have been included and maintained in the court file. The Globe has directed us to historical cases supporting the tradition of including such a list in the court files of criminal cases,[13] and has also identified examples of juror lists readily available in Superior Court files of recent high-profile criminal trials, usually in the form of "Daily Reports of Juror Attendance."[14] Based on the findings of the judge in this case, it is apparent that there is inconsistency in the current practice of retaining juror lists, a matter of significant public and systemic importance.

Consequently, we take this opportunity to direct that a list of the names of jurors empanelled in any criminal case be included in the court file of the case, no later than at the

---

[13] The history of this tradition has been confirmed by our own random review of records of cases (mostly murder trials) tried by juries before the Supreme Judicial Court in the Nineteenth Century.

[14] Also labelled as "Daily Trial Attendance Records" in some court files.

completion of the trial.[15]  This directive is consistent with the prior practice of the Superior Court, both historically and in more recent times.[16]

Having determined that a juror list is a court record, we turn to the subject of its impoundment.  In order to overcome the public right of access to judicial records, we have repeatedly stated that there must be a showing of "good cause," Republican Co., 442 Mass. at 222-223, and cases cited, and that in determining whether good cause has been shown, "a judge must balance the rights of the parties based on the facts of each case."  Id., quoting Boston Herald, Inc. v. Sharpe, 432 Mass. 593, 604 (2000).  "In doing so, the judge must take into account all relevant factors, including, but not limited to, the nature of the parties and the controversy, the type of information and the privacy interests involved, the extent of the community interest, and the reason for the request" (quotation and

---

[15] This list is not to include information obtained from the confidential juror questionnaires and is appropriately limited to the names of the jurors on the daily attendance records.

[16] In a letter dated May 18, 1983, James P. Lynch, Jr., then Chief Justice of the Superior Court, addressed the practice in a letter to the Massachusetts Newspaper Publishers Association. In that letter, Chief Justice Lynch explained that, "[a]s a practical matter," a person could properly obtain juror names from the session clerk's "daily attendance record[s]," and could then obtain juror addresses from the jury commissioner's list (of all jurors summoned to the court session) on file and publicly available in the clerk-magistrate's office.  See G. L. c. 234A, § 67.

citations omitted).  Republican Co., supra.  Importantly, we have emphasized that in balancing these interests, "impoundment is always the exception to the rule, and the power to deny public access to judicial records is to be strictly construed in favor of the general principle of publicity" (quotation and citation omitted).  Id.  Access to information about the operation of the administration of justice, including information about jurors who render justice, promotes confidence in the judicial system by, among other things, providing an independent nongovernmental verification of the impartiality of the jury process, and educating the public as to their duties and obligations should they be called for jury service.  The burden falls on the party seeking to limit or bar access to judicial records to overcome the presumption that the records ought to be accessible to the public.  Id. at 225.

We review decisions to restrict access to or impound judicial records for abuse of discretion or other legal error. Boston Herald, Inc., 432 Mass. at 601.  In the present case, the only reason proffered to support good cause was the apparent personal preferences of the jurors who responded to the judge's letter sent approximately one month after the trial had concluded.[17]  We are not indifferent to the desire of many jurors

---

[17] It is important to note what this case is not about.  It is not about impounding the names and addresses of seated jurors

to return to their private lives uninterrupted by media or other inquiries about their service; however, standing alone, such interests ordinarily will be inadequate as a matter of law to support an impoundment order in the face of the great weight we afford to the principle of public availability. In this respect, we agree with the United States Court of Appeals for the First Circuit that "where -- as here -- the trial judge points to no special reason for confidentiality other than the personal preferences of the jurors . . . the public's long-term interest in maintaining an open judicial process must prevail in the balance." In re Globe Newspaper Co., 920 F.2d 88, 91 (1st Cir. 1990). A judge's personal distaste for press interviews of jurors is accorded no weight in this balancing.[18] Although we recognize that there are courts in other jurisdictions that have

_____

during the course of a highly visible trial where the risks of inappropriate juror contact would jeopardize a party's right to a fair trial. It is also not about withholding juror identities after trial where there is a risk of personal harm to the jurors. See Silva, 448 Mass. at 708. Nor is it about a judge's authority to impound the responses of jurors to highly invasive or personal questions (necessitated by the nature of the case to be tried) posed during the individual voir dire process. In each of these circumstances, good cause would be readily apparent.

[18] It is, however, not inappropriate for a trial judge to meet with the jurors postverdict to discuss the importance of and value in not disclosing what was said by other jurors in the deliberative process, and to advise jurors of their right not to respond to media requests, and to bring acts of harassment to the court's attention promptly. See, e.g., In re Globe Newspaper Co., 920 F.2d at 91 (judge "properly urged the jurors to keep their deliberations confidential").

concluded that there is no public right to know the identities of jurors or that the privacy interests of jurors alone trump the public right of access to judicial records that disclose their identities, see Commonwealth v. Silva, 448 Mass. 701, 709 n.14 (2007), we have historically concluded otherwise. "[T]he prospect of criminal justice being routinely meted out by unknown persons does not comport with democratic values of accountability and openness." In re Globe Newspaper Co., supra at 98.

Accordingly, the ruling of the judge is reversed in part, and the names of the jurors shall be made available, without restriction, to the Globe.[19]

So ordered.

_____

[19] The restriction on dissemination placed on the Globe's use of the names and addresses lawfully obtained from the court's records is plainly a prior restraint forbidden by the First Amendment and art. 16. See George W. Prescott Publ. Co. v. Stoughton Div. of the Dist. Court Dep't of the Trial Court, 428 Mass. 309, 310-312 (1998); United States v. Quattrone, 402 F.3d 304, 311-313 (2d Cir. 2005). The Attorney General recognizes the problem, but suggests that the matter should be remanded for clarification, where it is not clear whether this restriction was part of the judge's original order. The restriction fails in any case.

GANTS, C.J. (concurring in part and dissenting in part). I agree with the court that the names of jurors, once announced in court during jury selection, as they were in this case, are part of the public record of the case and that, in the absence of an order of impoundment supported by good cause, the names are available to any member of the public.[1] Therefore, if the Globe Newspaper Company, Inc. (Globe), wished to learn the names of the jurors, it, like any person, could have ordered a transcript of the jury empanelment, even an expedited transcript, and obtained the names from that transcript. See Commonwealth v. Winfield, 464 Mass. 672, 675 (2013) ("right of access to court trials [under the First Amendment to the United States Constitution] includes the right to purchase a transcript of the court proceeding that was open to the public"). But the Globe did not choose to exercise that right; instead, it asked the court to create a document that was not part of the case file,

---

[1] "The due process clause precludes the empanelment of an anonymous jury at a criminal trial unless anonymity is necessary to protect the jurors from harm or improper influence. . . . [N]o anonymous jury is to be empanel[l]ed in the courts of the Commonwealth unless the trial judge has first determined on adequate evidence that anonymity is truly necessary and has made written findings on the question." Commonwealth v. Angiulo, 415 Mass. 502, 527 (1993), citing United States v. Thomas, 757 F.2d 1359, 1365 (2d Cir.), cert. denied sub nom. Fisher v. United States, 474 U.S. 819 (1985), and cert. denied sub nom. Rice v. United States, 479 U.S. 818 (1986). Unless the judge has made the findings necessary to justify an anonymous jury, the name of each prospective juror should be announced on the record before that juror is empanelled.

listing the names and addresses of the jurors, and provide that newly created document to the Globe. I do not agree with the court that, following the verdict, a list of the jurors' names must be created and made a part of the court file, available to any member of the public on request unless the list is ordered impounded based on a showing of good cause.

I understand that the creation of such a list would make it easier and less expensive for the Globe (or, for that matter, any member of the public) to contact jurors about the verdict without incurring the expense of ordering a transcript of the jury empanelment. But the constitutional right of public access to court trials does not require courts to create documents so that the press or members of the public may learn what occurred at trial without the need to attend the trial or order a transcript, whether the document asked to be created is a compilation of a list of jurors or of witnesses, or a summary of key testimony. Cf. id. at 677-678 ("We know of no case where the First Amendment right of access has been extended to include a right to [a court document or recording that is] not the official record of the trial and is not referenced or contained in the court file"). Nor does the common-law right of access to judicial records apply where, as in this case, no juror list was filed in court and made a part of the case file. See id. at 679 ("Where a document or recording is kept in the court file, it is

a judicial document under our case law that is accessible to the public unless impounded").  Where the court is in possession of documents or information that are not kept in the court file, such as a list of trial jurors, the appropriate standard is "whether a record that is not kept in the court file is nonetheless so important to public understanding of the judicial proceeding that it should be presumed to be public, so that the public may 'assume a significant, positive role in the functioning of the judicial system.'"  Id. at 680-681, quoting Boston Herald, Inc. v. Sharpe, 432 Mass. 593, 607 (2000).  The burden rests with the proponent of the motion, here the Globe, "to show why the interests of justice would be served by making a document that is not presumptively public available to the public in this particular case."  Winfield, 464 Mass. at 681.  "We review the judge's decision for abuse of discretion."  Id.  Applying that standard, I conclude that the judge did not abuse his discretion in making available to the Globe only the names and addresses of those jurors who wished to speak with the Globe.  Therefore, I respectfully dissent.[2]

---

[2] I agree with the court that, once the names of the jurors are made publicly available, any order restricting dissemination is an unconstitutional prior restraint forbidden by the First Amendment to the United States Constitution and art. 16 of the Massachusetts Declaration of Rights, and therefore concur with that part of the court's opinion.

In its opinion, the court recognizes that several jury lists were created in this case: (1) the "jury [e]mpanelment sheet" that identifies the jurors who were sent to the court room for empanelment, and who were sworn, excused, or not reached; this document was returned to the jury pool office after the jury were selected; (2) the "Daily Report of Juror Attendance," which was used by the session clerk to record daily juror attendance and was returned to the jury pool office each day; (3) the list prepared by the court officers of the empanelled jurors' names and telephone numbers, so that they could be contacted during the course of the trial; this list was destroyed after trial; and (4) the confidential juror questionnaires completed by the empanelled jurors, which are not public records, G. L. c. 234A, § 23, and which "were appropriately destroyed after the trial." Ante at note 12. The court does not suggest that any of these documents should have been placed in the court file or that it is the current practice of all courts to do so. Rather, the court notes that "there is inconsistency in the current practice of retaining juror lists" and that it was "the prior practice" of the Superior Court to include such a list in the case file. Ante at    . The court then decides to require courts to create a list of jurors' names and place the list in the court file "no later than at the completion of the trial." Id. I recognize that the court,

under its superintendence power, has the authority to order trial courts to <u>create</u> a document and place it in the court file, where it will then enjoy the presumption of public access as a court record.  But I question the wisdom of doing so and fear that we may someday come to regret it.

The court contends that the creation and filing of a juror list is required by the "public's long-term interest in maintaining an open judicial process."  <u>Id</u>. at    .  Our judicial process, however, is already open.  All trials are public, and as noted, trial transcripts may be ordered by anyone willing to pay for them.  Apart from those rare trials where jurors are selected anonymously, the names of jurors should be announced on the record as part of a public trial.[3]

The court also contends that creating a juror list and making it part of the court record "promotes confidence in the judicial system by, among other things, providing an independent nongovernmental verification of the impartiality of the jury

---

[3] I recognize that, as happened here, the names of jurors sometimes are announced only at sidebar, but, in the absence of an impoundment order, all that is said at sidebar is part of the public trial and can be read in the transcript.  Where a transcript is ordered and where that transcript would reveal intensely personal matters regarding prospective jurors that were discussed at sidebar during individual voir dire, such as whether prospective jurors in a sexual assault trial have ever themselves been victims of a sexual assault, a judge may impound that personal information for good cause shown.  See <u>ante</u> at note 17.

process, and educating the public as to their duties and obligations should they be called for jury service." Id. at    . But this is an unreasonably optimistic expectation of the consequences of this opinion. Who are we kidding? The press wants the names of jurors so they can interview the jurors about what was said in the jury room and why they reached the verdict they did. The court itself recognizes the dangers lurking in such an inquiry, noting that it is "not inappropriate for a trial judge to meet with the jurors postverdict to discuss the importance of and value in not disclosing what was said by other jurors in the deliberative process." Id. at note 18.

Moreover, where a court record is created naming the jurors, that court record is available to anyone on request, not just the press. Therefore, in the absence of an impoundment order, anyone interested in or unhappy with the verdict could obtain the list simply by requesting the court file and, because it is not difficult these days to find online a person's address, telephone number, electronic mail (e-mail) address, or social media page, anyone obtaining this list could attempt to communicate with the jurors by telephone, letter, e-mail, or social media. To be sure, a person already can learn the names of jurors and attempt to communicate with them about the verdict without a juror list if the person is willing to sit through jury empanelment or to order a trial transcript of the

empanelment, but the court's opinion will make it far easier for a person to do so.  I do not think it is wise to encourage such postverdict communications, especially where the jurors will have no say whether they welcome such communications.

I also fear that the creation of a juror list to be included in the case file may, over time, diminish the fairness and impartiality of jurors.  Jurors are the only persons in this country that we presently draft into government service.  We ask them for a few days or a few weeks to put aside their employment, educational, or family responsibilities, and devote their full attention to a criminal or civil trial where they will decide guilt or liability.  We have had few instances in this Commonwealth where jurors have been threatened or harassed after their verdict, but many jurors fear the possibility, especially where they reside in or near the communities of the litigants or the litigants' families.  By making it easy for anyone to obtain their names, the risk of such misconduct will increase, and jurors' fears that their verdict may make them the target of such misconduct, even if it is only an angry telephone call or Facebook posting, will increase proportionately.  I would like to think that jurors will put aside such concerns in

reaching a verdict, but I worry that this opinion will make it more difficult for jurors to do so.[4]

Where, as here, there was no jury list in the court file, the burden rested with the Globe to show that such a list should be created and made part of the court file because it is "so important to public understanding of the judicial proceeding that it should be presumed to be public, so that the public may 'assume a significant, positive role in the functioning of the judicial system.'"  Winfield, 464 Mass. at 681, quoting Boston Herald, Inc., 432 Mass. at 607.  Here, where the list of jurors was already publicly available from the trial record, the judge did not abuse his discretion in determining that whatever public interest there may be in the Globe speaking to the jurors about their verdict could be accomplished by providing a list only of those jurors who were willing to speak to the Globe.  If the Globe wished to speak to jurors who had no desire to speak with its reporters, it could have ordered a transcript of the jury empanelment and obtained their names from the public record.  Neither public understanding of the judicial process nor the

---

[4] I recognize that the court's opinion would permit a judge to impound a juror list where good cause is shown, but the court made clear that good cause would generally require "a risk of personal harm to the jurors."  Ante at note 17.  Thankfully, there are very few such cases where there is evidence of a "risk of personal harm" to jurors.  But there are many more cases where there might be a risk that someone may wish to reach out to a juror in a manner that a juror would find to be threatening, harassing, or troubling.

interests of justice are served by requiring the court to create a list of jurors that includes those who would prefer to be left alone and to file that list in the court file so that the Globe, or anyone else, may communicate with them against their wishes about the verdict they rendered.