Gants, C.J.
(concurring in part and dissenting in part). I agree with the court that the names of jurors, once announced in court during jury selection, as they were in this case, are part of the public record of the case and that, in the absence of an order of impoundment supported by good cause, the names are available to any member of the public. [1] Therefore, if the Globe Newspaper Company, Inc. (Globe), wished to learn the names of the jurors, it, like any person, could have ordered a transcript of the jury empanelment, even an expedited transcript, and obtained the names *492 from that transcript. See Commonwealth v. Winfield, 464 Mass. 672, 675 (2013) (“right of access to court trials [under the First Amendment to the United States Constitution] includes the right to purchase a transcript of the court proceeding that was open to the public”). But the Globe did not choose to exercise that right; instead, it asked the court to create a document that was not part of the case file, listing the names and addresses of the jurors, and provide that newly created document to the Globe. I do not agree with the court that, following the verdict, a list of the jurors’ names must be created and made a part of the court file, available to any member of the public on request unless the list is ordered impounded based on a showing of good cause.
I understand that the creation of such a list would make it easier and less expensive for the Globe (or, for that matter, any member of the public) to contact jurors about the verdict without incurring the expense of ordering a transcript of the jury empanelment. But the constitutional right of public access to court trials does not require courts to create documents so that the press or members of the public may learn what occurred at trial without the need to attend the trial or order a transcript, whether the document asked to be created is a compilation of a list of jurors or of witnesses, or a summary of key testimony. Cf. id. at 677-678 (“We know of no case where the First Amendment right of access has been extended to include a right to [a court document or recording that is] not the official record of the trial and is not referenced or contained in the court file”). Nor does the common-law right of access to judicial records apply where, as in this case, no juror list was filed in court and made a part of the case file. See id. at 679 (“Where a document or recording is kept in the court file, it is a judicial document under our case law that is accessible to the public unless impounded”). Where the court is in possession of documents or information that are not kept in the court file, such as a list of trial jurors, the appropriate standard is “whether a record that is not kept in the court file is nonetheless so important to public understanding of the judicial proceeding that it should be presumed to be public, so that the public may ‘assume a significant, positive role in the functioning of the judicial system.’ ” Id. at 680-681, quoting Boston Herald, Inc. v. Sharpe, 432 Mass. 593, 607 (2000). The burden rests with the proponent of the motion, here the Globe, “to show why the interests of justice would be served by making a document that is not presumptively public available to the public in this particular case.” Winfield, *493 464 Mass. at 681. “We review the judge’s decision for abuse of discretion.” Id. Applying that standard, I conclude that the judge did not abuse his discretion in making available to the Globe only the names and addresses of those jurors who wished to speak with the Globe. Therefore, I respectfully dissent.[2]
In its opinion, the court recognizes that several jury lists were created in this case: (1) the “jury [ejmpanelment sheet” that identifies the jurors who were sent to the court room for empan-elment, and who were sworn, excused, or not reached; this document was returned to the jury pool office after the jury were selected; (2) the “Daily Report of Juror Attendance,” which was used by the session clerk to record daily juror attendance and was returned to the jury pool office each day; (3) the list prepared by the court officers of the empanelled jurors’ names and telephone numbers, so that they could be contacted during the course of the trial; this list was destroyed after trial; and (4) the confidential juror questionnaires completed by the empanelled jurors, which are not public records, G. L. c. 234A, § 23. Ante at note 12. The court does not suggest that any of these documents should have been placed in the court file or that it is the current practice of all courts to do so. Rather, the court notes that “there is inconsistency in the current practice of retaining juror lists” and that it was “the prior practice” of the Superior Court to include such a list in the case file. Ante at 489. The court then decides to require courts to create a list of jurors’ names and place the list in the court file “no later than at the completion of the trial.” Id. I recognize that the court, under its superintendence power, has the authority to order trial courts to create a document and place it in the court file, where it will then enjoy the presumption of public access as a court record. But I question the wisdom of doing so and fear that we may someday come to regret it.
The court contends that the creation and filing of a juror list is required by the “public’s long-term interest in maintaining an open judicial process” (citation omitted). Id. at 490. Our judicial process, however, is already open. All trials are public, and as noted, trial transcripts may be ordered by anyone willing to pay for them. Apart from those rare trials where jurors are selected anonymously, the names of jurors should be announced on the *494 record as part of a public trial.[3]
The court also contends that creating a juror list and making it part of the court record “promotes confidence in the judicial system by, among other things, providing an independent nongovernmental verification of the impartiality of the jury process, and educating the public as to their duties and obligations should they be called for jury service.” Id. at 490. But this is an unreasonably optimistic expectation of the consequences of this opinion. Who are we kidding? The press wants the names of jurors so they can interview the jurors about what was said in the jury room and why they reached the verdict they did. The court itself recognizes the dangers lurking in such an inquiry, noting that it is “not inappropriate for a trial judge to meet with the jurors postverdict to discuss the importance of and value in not disclosing what was said by other jurors in the deliberative process.” Id. at note 18.
Moreover, where a court record is created naming the jurors, that court record is available to anyone on request, not just the press. Therefore, in the absence of an impoundment order, anyone interested in or unhappy with the verdict could obtain the list simply by requesting the court file and, because it is not difficult these days to find online a person’s address, telephone number, electronic mail (e-mail) address, or social media page, anyone obtaining this list could attempt to communicate with the jurors by telephone, letter, e-mail, or social media. To be sure, a person already can learn the names of jurors and attempt to communicate with them about the verdict without a juror list if the person is willing to sit through jury empanelment or to order a trial transcript of the empanelment, but the court’s opinion will make it far easier for a person to do so. I do not think it is wise to encourage such postverdict communications, especially where the jurors will have no say whether they welcome such communications.
I also fear that the creation of a juror list to be included in the case file may, over time, diminish the fairness and impartiality of *495 jurors. Jurors are the only persons in this country that we presently draft into government service. We ask them for a few days or a few weeks to put aside their employment, educational, or family responsibilities, and devote their full attention to a criminal or civil trial where they will decide guilt or liability. We have had few instances in this Commonwealth where jurors have been threatened or harassed after their verdict, but many jurors fear the possibility, especially where they reside in or near the communities of the litigants or the litigants’ families. By making it easy for anyone to obtain their names, the risk of such misconduct will increase, and jurors’ fears that their verdict may make them the target of such misconduct, even if it is only an angry telephone call or Facebook posting, will increase proportionately. I would like to think that jurors will put aside such concerns in reaching a verdict, but I worry that this opinion will make it more difficult for jurors to do so.[4]
Where, as here, there was no jury list in the court file, the burden rested with the Globe to show that such a list should be created and made part of the court file because it is “so important to public understanding of the judicial proceeding that it should be presumed to be public, so that the public may ‘assume a significant, positive role in the functioning of the judicial system.’ ” Winfield, 464 Mass. at 681, quoting Boston Herald, Inc., 432 Mass. at 607. Here, where the list of jurors was already publicly available from the trial record, the judge did not abuse his discretion in determining that whatever public interest there may be in the Globe speaking to the jurors about their verdict could be accomplished by providing a list only of those jurors who were willing to speak to the Globe. If the Globe wished to speak to jurors who had no desire to speak with its reporters, it could have ordered a transcript of the jury empanelment and obtained their names from the public record. Neither public understanding of the judicial process nor the interests of justice are served by requiring the court to create a list of jurors that includes those who would prefer to be left alone and to file that *496 list in the court file so that the Globe, or anyone else, may communicate with them against their wishes about the verdict they rendered.

“The due process clause precludes the empanelment of an anonymous jury at a criminal trial unless anonymity is necessary to protect the jurors from harm or improper influence. . . . [N]o anonymous jury is to be empanel[l]ed in the courts of the Commonwealth unless the trial judge has first determined on adequate evidence that anonymity is truly necessary and has made written findings on the question.” Commonwealth v. Angiulo, 415 Mass. 502, 527 (1993), citing United States v. Thomas, 757 F.2d 1359, 1365 (2d Cir.), cert, denied sub nom. Fisher v. United States, 474 U.S. 819 (1985), and cert, denied sub nom. Rice v. United States, 479 U.S. 818 (1986). Unless the judge has made the findings necessary to justify an anonymous jury, the name of each prospective juror should be announced on the record before that juror is empanelled.

I agree with the court that, once the names of the jurors are made publicly available, any order restricting dissemination is an unconstitutional prior restraint forbidden by the First Amendment to the United States Constitution and art. 16 of the Massachusetts Declaration of Rights, and therefore concur with that part of the court’s opinion.

I recognize that, as happened here, the names of jurors sometimes are announced only at sidebar, but, in the absence of an impoundment order, all that is said at sidebar is part of the public trial and can be read in the transcript. Where a transcript is ordered and where that transcript would reveal intensely personal matters regarding prospective jurors that were discussed at sidebar during individual voir dire, such as whether prospective jurors in a sexual assault trial have ever themselves been victims of a sexual assault, a judge may impound that personal information for good cause shown. See ante at note 17.

I recognize that the court’s opinion would permit a judge to impound a juror list where good cause is shown, but the court made clear that good cause would generally require “a risk of personal harm to the jurors.” Ante at note 17. Thankfully, there are very few such cases where there is evidence of a “risk of personal harm” to jurors. But there are many more cases where there might be a risk that someone may wish to reach out to a juror in a manner that a juror would find to be threatening, harassing, or troubling.